*In re* ESTATE OF MINNIE MALLOY, a Disabled Person.—(LELAND J. MALLOY, Petitioner-Appellee, *v.* MINNIE MALLOY, Respondent-Appellant.)

First District (5th Division)    No. 79-1990

Opinion filed May 22, 1981.

William Elden, of Chicago, for appellant.

Biggam, Cowan, Marquardt & Lunding, of Chicago (Charles M. Biggam, Jr., of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is an appeal from orders entered in a guardianship hearing held pursuant to section 11a—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—1 *et seq.*), declaring appellant a disabled person and appointing plenary guardians for her person and her estate. We affirm.

The issues presented for review are: (1) whether the notice of appeal was fatally defective and not timely filed; (2) whether this appeal was so frivolous, vexatious and unreasonable as to warrant awarding appellee costs and attorney fees; (3) whether the failure to file a medical report with the guardianship petition deprived the trial court of personal jurisdiction over the appellant; (4) whether the trial court had the authority to order appellant to be examined by a physician; and (5) whether the finding that appellant was a disabled person was supported by the evidence adduced at the hearing.

On July 16, 1979, Leland Malloy (petitioner) filed a petition pursuant to the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—1 *et seq.*) to have his mother declared a disabled person and to have a guardian for her estate appointed. Upon the filing of the petition, the court appointed a *guardian ad litem* (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—10(a)) who subsequently interviewed appellant and filed a report of that interview with the court. The court then appointed a temporary guardian of appellant's estate. (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—4.) On

October 4, 1979, the court granted petitioner's motion to have appellant examined by Dr. Conover Talbot. Dr. Talbot examined appellant on October 9, 1979, and filed a report of the results of the examination with the court. A hearing on the petition was had on October 11, 1979, at which the following evidence was taken.

Dr. Bernard H. Shulman, a psychiatrist testifying on behalf of appellant, stated that she had an obvious memory defect when questioned about her financial affairs; that she required the assistance of others in order to refresh her memory; that she did not know of her assets unless reminded of them; that as a result of this defect and of her desire to please others, she could be relatively easily led to conclusions which the assisting party desired her to reach. Nonetheless, in Dr. Shulman's opinion, the appellant could make a reasonable judgment if supplied with the forgotten facts, and she was capable of managing her own affairs if she was apprised of those affairs. Dr. Shulman's examination consisted of one 45-minute session.

Dr. Thomas Leider, a psychiatrist, also testified on behalf of appellant. He was essentially in agreement with the conclusions reached by Dr. Shulman. In response to examination by the court, Dr. Leider testified that without being reminded appellant would not have independent knowledge of the nature or extent of her assets. However, Dr. Leider believed this to be due essentially to the fact that throughout her life others had managed her affairs and not due to her memory defect. In his opinion appellant was able to manage her affairs because she was able to obtain the help she needed, knew where to turn for such help, and knew whom to choose to entrust with those decisions. Nevertheless, Dr. Leider further testified that appellant could not independently "know where everything is, and make all the decisions, make them in a way that was necessarily in her best interests," relative to the management of her estate or financial affairs.

Dr. Conover Talbot, an internist, testified on behalf of appellee, the petitioner. Dr. Talbot had performed a medical examination of appellant, pursuant to court order. The results of the examination showed that appellant suffered a generalized sclerotic disease commensurate with her age of 78. She also showed signs of altered mental capacity consistent with her age. During the examination Dr. Talbot asked questions of appellant to determine the state of her mental faculties. In his opinion appellant would require help in managing her financial affairs.

The report which Dr. Talbot prepared subsequent to his examination of appellant was also entered into evidence.[1] It contained a brief

---

[1] It is to be noted that the contents of a report made pursuant to section 11a—9 is not to be made a part of the public record of the hearing but is available to the appellate court on review. Ill. Rev. Stat. 1979, ch. 110½, par. 11a—9(c).

evaluation of appellant's physical condition and stated that appellant had impaired memory recall, impaired conjugative ability (the ability to draw conclusions from several factors), impaired mathematical skills and physical debility of old age in keeping with her chronological age. The report further stated that appellant was only partially capable of making personal and financial decisions; incapable of being custodian of her assets, or of making investment decisions or of collecting and distributing income. Although capable of minor housekeeping and personal grooming decisions, she was incapable of making decisions regarding her health and safety. Dr. Talbot based these conclusions on her impaired memory and conjugative abilities. On cross-examination Dr. Talbot admitted that although he had presented appellant with simple mathematical problems, he had asked appellant no questions concerning her financial affairs.

Appellant was called to testify under section 60 of the Illinois Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 60.) She testified that she never had to bother with the management of her financial affairs. Although she did not own stocks, she thought she possibly owned bonds which were located in a bank on Halsted Street. She did not know the value of her assets and did not think she owed any money. Her daughter had always paid appellant's bills. Appellant could not recall whether she had a trust nor did she know her yearly income. She testified that although she felt she could handle money without assistance, she would not try to do so. Appellant could not remember if she had a checking account and could not recall the purpose for two checks shown to her while she was testifying which bore her signature. Although appellant could recall hiring her attorney, she could not remember his name nor instructing him to resist the guardianship appointment. She could not recall any conversations with him. In response to a question posed by the court, appellant testified that she could not choose which of her children should be appointed her guardian.

At the conclusion of the evidence presented at the October 11, 1979, hearing, the court made an oral finding that appellant was unable to manage her estate or financial affairs. The following day, October 12, 1979, the court entered a written order finding that appellant was a disabled person unable to manage her financial affairs, continuing the appointment of the Marquette National Bank as temporary guardian of the estate, and continuing the proceedings to October 19, 1979. On October 19, 1979, petitioner was granted leave to file an amended petition to additionally request the appointment of a guardian for appellant's person. On October 23, 1979, upon the filing of the amended petition, the court entered an order finding that appellant was a disabled person totally unable to manage her estate or financial affairs, and ordering that Patrick Murphy, acting public guardian, be appointed as plenary guardian for her

estate, and that appellant's daughter be appointed as plenary guardian for her person. The order specified as the basis of its findings the testimony heard by the court including that of Doctors Shulman, Talbot and Leider.

Appellant filed a notice of appeal specifying the appeal to be from orders entered October 11, 1979, and October 18, 1979. Appellee filed in this court a motion to dismiss the appeal and to award costs and attorney fees incurred in defending the appeal pursuant to Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5)), which was taken with the appeal.

OPINION

Initially, we address appellee's motion to dismiss this appeal. Appellee first states that the appeal should be dismissed because the record is silent as to the existence of the October 18 order from which the appeal could be taken.

In her notice of appeal appellant stated that she "appeals from the Orders entered in this cause on October 11, 1979 and October 18, 1979, declaring [her] a disabled person and appointing [her daughter] as guardian of her person and a Public Guardian as guardian of her estate."

■■ The purpose of a notice of appeal is to inform the party in whose favor judgment has been rendered that the unsuccessful party desires a review of the case. When the deficiency in the notice is one of form and not substance, the appeal may still be entertained by the reviewing court. (*In re Estate of Kaluza* (1978), 62 Ill. App. 3d 267, 379 N.E.2d 78.) Where the notice adequately sets forth the judgment complained of and the relief sought so that the successful party is advised of the nature of the appeal, a technical defect in the form of the notice is not fatal. *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380.

■■ The notice of appeal in the instant case specifically sets forth that appellant was contesting the orders finding her a disabled person and appointing guardians of her person and of her estate. Such orders were in fact entered on October 12, 1979, and October 23, 1979. Thus, although appellant incorrectly stated the dates of these orders, she sufficiently articulated their substance so that there could be no confusion as to the orders contested. As such appellee was fully informed of the nature of the review sought. Accordingly, the failure to correctly state the dates of the relevant orders, although technically a defect, is not fatal. See *Burtell v. First Charter Service Corp.*

■■ Appellee next contends that notice of this appeal was not timely filed and hence should be dismissed. Appellee contends that although the appeal was taken from the court's (oral) order of October 11, 1979, the notice of appeal was not filed until November 13, 1979, 32 days after the

court's written order of October 12, 1979. Notice of appeal must be filed with the clerk of the circuit court within 30 days after entry of the final judgment. (Ill. Rev. Stat. 1979, ch. 110A, par. 303(a).) If at the time of announcing a final judgment the judge requires a written judgment to be signed by him, the judgment becomes final only when the signed judgment is filed. (Ill. Rev. Stat. 1979, ch. 110A, par. 272.) Thus, the October 12, 1979, date is controlling.

The 30th day for filing a notice of appeal from October 12, 1979, fell on Sunday, November 11, 1979. The following day, November 12, 1979, was designated a court holiday in observance of Veterans Day. Neither that Sunday nor the day succeeding it, a legal holiday, is counted for purposes of computing the 30-day filing period. (Ill. Rev. Stat. 1979, ch. 1, par. 1012.) Therefore, the 30th day for filing appellant's notice of appeal was November 13, 1979. Accordingly, appellant's notice was timely filed. For these reasons appellee's motion to dismiss the appeal is denied.

Finally, appellee's motion requests that the costs, expenses and attorney's fees incurred in defending this appeal be ordered paid jointly and severally by George Malloy, a son of appellant, and by appellant's attorney. The motion alleges that "* * * [t]his appeal was * * * frivolous. As such, it constitutes a totally vexatious and unreasonable burden upon the estate to have to uphold the lower court's ruling. This becomes particularly opprobrius in light of the conflicting interests and outright deception of [George Malloy and the attorney] * * *." Appellee requests that this court enter the foregoing relief pursuant to Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5)). That rule allows a reviewing court, in its discretion, to give any judgment and make any order that ought to have been given or made and make any other relief that the case may require. Costs, expenses and fees may be recovered in the case of untrue allegations or denials made in pleadings, not in good faith and without probable cause under section 41 of the Illinois Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 41.) However, this latter section does not authorize a reviewing court to impose sanctions based on matters set forth in briefs on appeal. (*Brandenberry Park East Apartments v. Zale* (1978), 63 Ill. App. 3d 253, 263, 379 N.E.2d 674, 682.) George Malloy is not a party to this appeal. Furthermore, these allegations of the motion have not been raised in the trial court nor briefed on review and are, accordingly, also not properly before us. (*Anderson v. Anderson* (1975), 28 Ill. App. 3d 1029, 329 N.E.2d 523; see also *Crandall v. Country Mutual Insurance Co.* (1980), 81 Ill. App. 3d 140, 400 N.E.2d 1100.) Therefore, we do not further consider the motion as it relates to costs, expenses and attorney's fees, and we proceed to address the issues raised by appellant.

■■ Appellant first contends that the court lacked personal jurisdiction

over her in the contested guardianship proceedings. In support of her contention appellant asserts that compliance with either subsection 11a—9(a) or subsection 11a—9(b) of the Probate Act of 1975 (the Act) is a condition precedent to the court's acquisition of personal jurisdiction and that in the instant case there was no such compliance.

Appellant's contention is totally without merit. Subsection 11a—9(a) of the Act provides:

> "§11a—9. Report. (a) The petition for adjudication of disability and for appointment of a guardian should be accompanied by a report which contains (1) a description of the nature and type of the respondent's disability; (2) evaluations of the respondent's mental and physical condition and, where appropriate, educational condition, adaptive behavior and social skills, which have been performed within 3 months of the date of the filing of the petition; (3) an opinion as to whether guardianship is needed, the type and scope of the guardianship needed, and the reasons therefor; (4) a recommendation as to the most suitable living arrangement and, where appropriate, treatment or habilitation plan for the respondent and the reasons therefor; (5) the signatures of all persons who performed the evaluations upon which the report is based, one of whom shall be a licensed physician." (Ill. Rev. Stat. 1979, ch. 110½, par 11a—9(a).)

Subsection 11a—9(b) of the Act provides:

> "(b) If for any reason no report accompanies the petition, the court shall order appropriate evaluations to be performed by a qualified person or persons and a report prepared and filed with the court at least 10 days prior to the hearing." (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—9(b).)

Clearly, these statutory reporting provisions although procedural (*In re Estate of Mackey* (1980), 85 Ill. App. 3d 235, 406 N.E.2d 226) are not jurisdictional.

Before a court can compel a person to appear before it, the court must obtain jurisdiction over the person. (*Whitley v. Lutheran Hospital* (1979), 73 Ill. App. 3d 763, 392 N.E.2d 729.) Process is the means by which the court acquires such jurisdiction. (*Ogdon v. Gianakos* (1953), 415 Ill. 591, 114 N.E.2d 686; *Austin Liquor Mart, Inc. v. Department of Revenue* (1974), 18 Ill. App. 3d 894, 310 N.E.2d 719.) Process may take the form of a summons. (Ill. Rev. Stat. 1979, ch. 110, par. 13; *Whitley v. Lutheran Hospital*.) The method of serving summons upon individuals in civil actions is set forth in section 13.2 of the Illinois Civil Practice Act, "[e]xcept as otherwise expressly provided * * *." (Ill. Rev. Stat. 1979, ch. 110, par. 13.2.) Such express provision for the service of summons in guardianship proceedings upon an allegedly disabled adult is specifically

set forth in the Probate Act of 1975. (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—1 *et seq.*) Unless the allegedly disabled adult is also the petitioner, he or she is to be personally served with a copy of the guardianship petition and a summons not less than 14 days before the hearing. (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—10(e).) Appellant does not challenge the sufficiency of the summons served upon her; nor could she, as the record indicates that a proper summons was personally served upon her in compliance with subsection 11a—10(e) of the Act. (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—10(e).) Accordingly, the trial court acquired personal jurisdiction over her.

Although appellant has incorrectly characterized the lack of compliance with subsections 11a—9(a) and 11a—9(b) (Ill. Rev. Stat. 1979, ch. 110½, pars. 11a—9(a) and 11a—9(b)) as a jurisdictional defect, she has correctly noted that the report required by those subsections was not timely filed. If no evaluation report addressing the five factors enumerated in subsection 11a—9(a) of the Act accompanies the petition, subsection 11a—9(b) provides that the court order such evaluations to be made. Subsection 11a—9(b) further requires that a report containing those evaluations be filed with the court at least ten days prior to the hearing. Ill. Rev. Stat. 1979, ch. 110½, par. 11a—9(b).

On October 4, 1979, petitioner filed a motion with the court praying that the court order appellant to appear at Dr. Talbot's office on October 4, 1979, for the purpose of completing an examination and report as required by statute. The motion alleged that an appointment for a physical examination of appellant had been scheduled for October 1, 1979, ten days prior to the scheduled hearing date. The motion further alleged that petitioner was unable to take appellant to the examination due to the refusal of petitioner's brother to allow appellant to be examined. The court granted petitioner's motion and appellant was examined by Dr. Talbot on October 9, 1979. Dr. Talbot prepared a report, which although not exhaustive, complied with the content requirements set forth in subsection 11a—9(a). (Ill. Rev. Stat. 1979, ch. 110½, par 11a—9(a).) As Dr. Talbot's examination of appellant was only completed two days prior to the hearing, his report was not filed at least 10 days prior to the hearing as provided by subsection 11a—9(b).

Although the report was not filed within the time prescribed by statute, appellant neither objected to this failure prior to the hearing date nor to the receipt of the report into evidence. Accordingly, this issue is waived and it cannot now be urged as a ground for reversal. (*Bridges v. Neighbors* (1975), 32 Ill. App. 3d 704, 336 N.E.2d 233.) Even had this issue been preserved, the failure to timely file this report in the instant case would not constitute reversible error. The report was entered into evidence at the proceedings held on October 11, 1979, and thus was

available to the court for its consideration. The record also indicates that a copy of the report had been made available to counsel. The record further indicates that in addition to Dr. Talbot's examination, appellant underwent two additional examinations by psychiatrists prior to the hearing. All three physicians testified at the hearing as to the results of these examinations. In light of these considerations, the failure to timely file the report was not so prejudicial as to require reversal. See *In re Estate of Mackey* (1980), 85 Ill. App. 3d 235, 406 N.E.2d 226.

■■ Appellant next contends that the trial court did not have the statutory authority to order her against her will to be examined by a physician. This contention is likewise without merit. The previously quoted reporting provisions of section 11a—9 of the Act expressly provide that the petition for guardianship should be accompanied by a report which contains "(2) evaluations of the [allegedly disabled adult's] mental and physical condition * * *" (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—9(a)); and further, if no report accompanies the petition, "the court shall order appropriate evaluations to be performed by a qualified person * * *." (Ill. Rev. Stat. 1979, ch. 110½, par 11a—9(b).) Therefore, in the absence of a report, the trial court had the express statutory authority to order appropriate evaluations of appellant including an evaluation of her "physical condition" by Dr. Talbot, a licensed physician.

■■ Finally, appellant contends that the evidence adduced at the hearing was insufficient to support a finding that she was a disabled person. We disagree.

Under the previous statutory provision, an incompetent was defined as a person who because of certain mental or physical causes was "* * * incapable of managing his person or estate * * *." (Ill. Rev. Stat. 1977, ch. 110½, par. 11—2.) By contrast, a disabled person is now defined by section 11a—2 of the Act as a person who again for certain mental and physical causes "* * * is not fully able to manage his person or estate, * * *." Ill. Rev. Stat. 1979, ch. 110½, par. 11a—2.

In the instant case the court cited the testimony heard at the hearing including that of Doctors Shulman, Talbot and Leider as the factual basis of its findings. All three doctors testified that appellant had a pronounced memory defect, especially apparent when appellant was questioned relative to her estate. All stated that appellant had no present knowledge as to the nature and extent of her assets. Doctors Shulman and Talbot attributed this memory defect to the physical deterioration concomitant with advanced age. Furthermore, all three doctors testified that appellant needed assistance in managing her affairs.

Most significantly, appellant's own testimony at the hearing supported a finding that she was "not fully able to manage" her affairs. Her testimony indicated that she did not know the nature or extent of her

assets, or her yearly income. She did not know whether or not she had established a trust or if she had any debts. Appellant did not know if she had a checking account, although during her testimony she was shown two checks which bore her signature. Although these two checks were written in amounts of $13,000 and $1000, respectively, she could not remember the purpose for which they were written. A court of review may not substitute its judgment for that of the trial court unless those findings are contrary to the manifest weight of the evidence. (*In re Estate of Langford* (1977), 50 Ill. App. 3d 623, 364 N.E.2d 735.) In light of the evidence adduced at trial, the court's finding that appellant was a disabled person was clearly not against the manifest weight of the evidence.

Accordingly, appellee's motion to dismiss the appeal is denied and the motion to award attorney's fees and costs is not considered; the orders of the trial court are affirmed.

Motion denied in part and not considered in part; orders affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.