NEW BRAUNFELS INDEPENDENT
SCHOOL DISTRICT, Appellant,

v.

Kenneth ARMKE, Jr., et al., Appellees.

No. 10–83–127–CV.

Court of Appeals of Texas,
at Waco.

Sept. 15, 1983.

Rehearing Denied Oct. 13, 1983.

Marion J. Borchers, Borchers & Taylor, New Braunfels, for appellant.

Lonnie E. Chunn, Chunn & Chunn, New Braunfels, for appellees.

## OPINION

THOMAS, Justice.

Appellees, who were two high school seniors at the time this action commenced, were suspended from New Braunfels High School for three days (March 18–20, 1981) for consuming an alcoholic drink on a school-sponsored trip to Austin. In addition to the suspension, Appellant-New Braunfels Independent School District declared its intent to impose a scholastic penalty on Appellees, which would result in each student receiving zeros on all graded classwork for each day of the suspension, as well as having three grade points deducted for each day of suspension from their six-week grade averages then accruing. Appellees were granted a preliminary restraining order against imposition of the scholastic penalties, which was continued as a temporary injunction.

After a hearing, the trial court found Appellant had no regulation or policy which would authorize imposition of the proposed scholastic penalties in addition to the three-day suspensions. Because of the absence of such a regulation or policy, the court concluded: (1) the imposition of scholastic penalties in connection with Appellees' suspensions was unauthorized; (2) the practice of imposing a scholastic penalty in addition to suspension was void and unenforceable for lack of sufficient legal notice to Appellees; and (3) the practice of reducing grades for non-academic disciplinary reasons was constitutionally unreasonable and impermissible and deprived Appellees of protected property rights and substantive due process. The trial court entered a declaratory judgment in Appellees' favor and permanently enjoined Appellant from reducing their grade averages or from imposing any additional disciplinary penalty.

The pivotal question in this controversy is whether Appellant had a valid policy or regulation which would authorize imposition of the proposed scholastic penalties for each day of suspension. Appellant had formally adopted a comprehensive policy manual as well as a student handbook. The handbook, which was given to each high school student at the beginning of each school year, expressly provided that a student may be suspended from class for violating school policy relating to the use of alcoholic beverages under the facts presented. Appellees do not contest this policy, nor do they deny its violation. In the student handbook, we find the following provisions:

"Unexcused absences—those absences approved by the parent for the convenience of the student but not approved by the school. The student is penalized three points from his six-weeks grade average for each day absent. Work may not be made up."

*     *     *     *     *     *

"Truancy—cutting school all or part of a day without approval of either parents or school. The student is penalized three points from his six-weeks average plus being given a '0' for the day's work. In addition, the student is not permitted to make up missed work. Additional punishment can be given."

Appellees argue that Appellant could not impose grade penalties, which are to be assessed for unexcused absences and truancy, to Appellees' three-day suspensions, since the student handbook or policy manual did not provide that the days Appellees were suspended from class were to be treated as unexcused absences or truancy. Appellant contends, however, that school policy relating to use of alcohol by students, and the penalties which accompany the violation of such policy, had been repeatedly explained to Appellees and their classmates at high school assemblies. Appellant presented testimony from several high school students, including a student who had already been accepted at West Point Military Academy, and school personnel that school policy and attendant penalties relating to the use of alcohol by students had been carefully explained at school assemblies. The evidence is overwhelming that the high school students knew that, if a student was suspended for violating school policy relating to the use of alcohol, each day of suspension would be considered

an unexcused absence and that the suspended student would receive a zero for all graded classwork as well as having three grade points deducted from the six-week grade average then accruing. Even though the evidence shows Appellees were present at school assemblies where school policy and accompanying grade penalties regarding the use of alcohol were clearly explained, Appellees refused to acknowledge either the explanation or existence of such policy or penalties.

School policy relating to discipline need not be in writing in order to be legally enforceable. A rule or policy may be informal and may even be oral as long as it fairly apprises the student of the conduct prohibited and the penalties attached to the prohibited conduct. *Texarkana Independent School District v. Lewis,* 470 S.W.2d 727 (Tex.Civ.App.—Texarkana 1971, no writ); Tex.Att'y Gen.Op.No. M–395 (1969). We hold Appellant had orally adopted a valid policy that a student suspended for use of alcohol could receive the scholastic penalties proposed by Appellant in this instance, and that Appellees were fairly informed of the policy, the conduct prohibited, and the range of penalties attached thereto. *Graham v. Board of Ed., Idabel Sch. Dist. No. Five,* 419 F.Supp. 1214 (E.D. Okl.1976).

We sustain Appellant's first point, which contends the trial court erred in finding that Appellant had not adopted a policy or regulation which authorized the proposed scholastic penalties for each day of Appellees' suspensions. We hold the trial court's finding in that regard is against the great weight and preponderance of the evidence. Further, the trial court's conclusion that the practice of imposing scholastic penalties in addition to suspension was void and unenforceable for lack of sufficient legal notice to Appellees is erroneous.

Appellant's third point of error contends the trial court erred in concluding that imposition of an academic penalty for non-academic disciplinary purposes is constitutionally unreasonable and impermissible because it deprived Appellees of protected property rights and substantive due process. The question of whether an academic penalty may be used as punishment for unexcused absences has been decided against the trial court's legal conclusion. "We are not prepared to say that a school district may not adopt attendance regulations which impose academic penalties for unexcused absences from school ... Regulations of an independent school district which penalize students for unexcused absences by lowering their grades are not invalid on their face." Tex.Att'y Gen.Op.No. H–398 (1974). See also *Fisher v. Burkburnett Independent School Dist.,* 419 F.Supp. 1200 (N.D.Tex. 1976), wherein the court held that loss of a student's trimester grades upon expulsion for violation of the school's drug abuse policy was found not to be constitutionally excessive but was in furtherance of school disciplinary policy.

A student has a constitutionally protected property right to a public education and a liberty interest in his or her good name. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). We hold that reduction of Appellees' six-week grades by three points for each day of suspension has no adverse impact on Appellees' property rights to a public education. Furthermore, the evidence does not show that imposition of the scholastic penalties proposed will have any negative impact on the honor, reputation or name of either Appellee. The record shows that Appellees, at the time of hearing below, had already been admitted to the university of their choice and does not show that imposition of the scholastic penalties in this instance will adversely affect them in their educational, professional or personal lives in the future. Appellant's third point is sustained.

We do not reach Appellant's second point of error, as the judgment of the trial court is reversed and the permanent injunction is dissolved.