Victoria S. MARTINEZ and Jay C.
Tonne, Plaintiffs–Appellants,

v.

SCHOOL DISTRICT NO. 60, Pete Fallet-
ta, Frank C. Latino, Martin Gonzales,
Durwood Thornton, Henry C. Roman,
and Board of Education School District
No. 60, Defendants–Appellees.

No. 91CA0730.

Colorado Court of Appeals,
Div. IV.

July 2, 1992.

As Modified on Denial of Rehearing
Sept. 3, 1992.

Lawrence J. Simons, Frasher, Trechter, Gradisar & Wilson, Douglas K. Wilson, Pueblo, for plaintiffs-appellants.

Hall & Evans, Alan Epstein, Denver, for defendants-appellees.

Opinion by Judge CRISWELL.

Plaintiffs, Victoria S. Martinez and Jay C. Tonne, when they were students at Centennial High School in Pueblo, commenced this action against the defendants, School District No. 60, its board of education, and certain employees of the district, seeking injunctive and legal relief pursuant to C.R.C.P. 106(a)(4) and 42 U.S.C. § 1983 (1982). After an evidentiary hearing, the trial court denied plaintiffs' requested preliminary injunction. Later, based upon the evidence received at that hearing and upon affidavits submitted by the parties, the court granted defendants' motion for summary judgment and dismissed plaintiffs' complaint. Plaintiffs appeal from that judgment of dismissal. We affirm in part and reverse in part.

Plaintiffs' claims arise from a series of events which commenced at a high school dance in April 1990 and which culminated in their temporary suspension from class and their later temporary reassignment to another high school within the district. The manner in which these events occurred are largely undisputed.

The district has adopted a written policy regulating the use of alcohol, marijuana, and other unauthorized drugs or substances by high school students. Its pertinent provisions are:

> Regardless of whether the use or consumption of any alcoholic beverage, marijuana, unauthorized drugs, or any other unauthorized substance *occurred on or off the school premises*, it is the intent of Board policies JFCH and/or JFCI to control the use of unauthorized substances *during the regular school day or at any District-sponsored activity.*

> An offender of either one of these policies is a student who has sold, used, consumed, *is affected by*, has in his/her possession, or has provided to another any alcoholic beverages, marijuana, unauthorized drugs, or any other unauthorized substance *during the regular school day or at any District-sponsored activity.*

. . . .

> The student who has used, consumed, *is affected by*, has in his/her possession, or has provided any alcohol, marijuana, unauthorized drugs, or any other unauthorized substance shall be automatically suspended for five school days, may be recommended for expulsion, and shall be recommended for a disciplinary adjustment transfer to another school setting. (emphasis supplied)

On the evening in question, plaintiffs attended a dance held in Centennial's gymnasium. During the course of the evening, defendant Pete Falletta, one of the district's employees assigned to monitor the dance, discovered that a student was noticeably under the influence of alcohol.

Upon being questioned, this student informed Falletta that he had attended a private party where he had consumed alcoholic drinks prior to coming to the dance. This student also informed Falletta that plaintiffs had been in his company at that party.

As a result of this information, Falletta had the two plaintiffs accompany him off the dance floor and to a private office outside the gymnasium. At that location, in order to allow him to smell each plaintiff's breath, he asked each of them to blow in his face. After they did this (in plaintiff Martinez' case, after she did it twice), Falletta concluded that each had consumed an alcoholic beverage of some sort some time previously that evening. Upon questioning by Falletta, both plaintiffs acknowledged that they had consumed at least one bottle of beer prior to attending the dance. However, aside from having the smell of alcohol on their breaths, the record does not contain any evidence that either plaintiff was otherwise "affected by" his or her prior consumption of beer. Nevertheless, Falletta immediately sent both plaintiffs home.

Falletta reported this incident to defendant Latino, an assistant principal at Centennial, who issued a written notice of suspension to each plaintiff, suspending each of them from all classes for five days. In each case, the reason given for such suspension was the violation of the district's "policy on substance abuse." In addition, defendant Thornton, Centennial's principal, recommended to defendant Gonzales, the district's director of pupil personnel, that each plaintiff be transferred to another high school for a period of 90 days, and such recommendation was accepted.

Plaintiffs assert that these actions of the defendants violated their constitutional rights, Colorado statutes, and several policies and procedures of the district in numerous ways. Because of our disposition of this cause, however, we need consider only plaintiffs' claims that (1) defendant Falletta's requirement that plaintiffs blow in his face constituted an unlawful search in violation of their Fourth and Fourteenth Amendments' rights; (2) their suspension

for alleged violation of the district's substance abuse policy denied to them their procedural due process rights because they were not given adequate notice of the reach of that policy; and (3) their transfer to another school was required to be preceded by a hearing before the board of education (or its delegee) before such transfer could be effected.

I.

■ In response to plaintiffs' contentions respecting an alleged unlawful search, defendants assert that Falletta's requirement that each plaintiff blow in his face so that he could smell their breaths did not constitute a "search" for Fourth Amendment purposes. However, even if we assume, arguendo, that such requirement did constitute a search, we conclude that such search was not unreasonable under the circumstances. Hence, to the extent that the trial court dismissed any claim for constitutional violation based upon this incident, it committed no error.

■ Because school officials have a legitimate interest in maintaining student discipline so as to encourage an environment conducive to learning, such public officials are not required to possess probable cause to suspect that a student is in violation of a law or a school rule prior to conducting a search of that student or the student's property. Rather, the reasonableness of such a search is to be determined by the application of a two-part test. This test requires a consideration whether the search was justified at its inception and, if so, whether it was reasonably related in scope to the circumstances justifying the intrusion originally. *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985); *In the Interest of P.E.A.*, 754 P.2d 382 (Colo.1988).

■ Under this test, a search is justified in its inception if the school official possesses "reasonable suspicion" of a violation and the scope of the search will not be considered improper if the searcher's actions are reasonably related to the original purpose. *In the Interest of P.E.A., supra.*

Here, defendant Falletta was aware that another student was on school premises under the influence of alcohol. He also had information that this student had been in the company of the two plaintiffs. Under these circumstances, Falletta had reasonable suspicion that the two plaintiffs had also consumed alcohol, and he was warranted in attempting to verify that fact. Contrary to plaintiffs' contention, Falletta was not required to wait until plaintiffs, or one of them, had exhibited physical symptoms of alcohol consumption before undertaking an investigation to determine whether they had been drinking.

Hence, we conclude that, based on the undisputed facts, Falletta's actions were reasonable and furnished no basis for the assertion of a § 1983 claim against him or any of the other defendants. Accordingly, the trial court properly dismissed plaintiff's § 1983 claim based upon this incident.

In reaching this conclusion, we have not considered whether Falletta's actions may have violated some school district policy or resolution or, if so, whether any such violation might provide the foundation for a civil claim. If the trial court considers such issues to have been properly raised, these would remain open questions for it to consider in proceedings on remand.

## II.

■ The trial court dismissed that part of plaintiffs' claims that was based upon their suspensions and reassignments because it concluded that the district's alcohol and drug policy prohibited a student's off-premises, private, consumption of alcohol, even though the student was not "affected by" such consumption during the student's attendance at a district-sponsored activity. Plaintiffs assert, however, that the unambiguous provisions of the pertinent policy do not furnish grounds for discipline in cases of the private, off-premise, consumption of alcohol, unless a student is "affected by" such prior consumption. They also assert that they were given no prior notice that this policy was intended to apply in instances in which such consumption had no effect. They claim, therefore, they had

no reasonable notice that the conduct they engaged in was improper and that their later suspension and transfer were violative of their due process rights.

We conclude that the trial court misinterpreted the district's written policy. Hence, we reverse the judgment of dismissal insofar as it concerns plaintiffs' allegations of the improper imposition of discipline upon them.

We note, first, that the disciplinary action taken by the district was based solely upon plaintiffs' alleged violation of this written policy. Neither in the trial court nor in this court has any defendant sought to justify the district's actions on the basis that plaintiffs' conduct was illegal or otherwise intrinsically improper. Consequently, nothing within this opinion should be construed as addressing such subjects.

■ In considering the district's policy here, we observe that a school district's regulation of students' conduct must bear some reasonable relationship to the educational environment; a school district cannot regulate purely private activity having no effect upon that environment. *See generally* Annotation, *Right to Discipline Pupil for Conduct Away from School Grounds or Not Immediately Connected with School Activities,* 53 A.L.R.3d 1124 (1973). *See also Board of Education v. Ambach,* 96 A.D.2d 637, 465 N.Y.S.2d 77 (1983) (school district may not discipline student for conduct occurring at home over school holiday).

For example, while the private, off-premises, use of alcohol by a student athlete may have an effect upon his athletic performance and may, therefore, be a fit subject for regulation, even these circumstances do not provide to a school an opportunity for unlimited regulation. *See Bunger v. Iowa High School Athletic Ass'n,* 197 N.W.2d 555 (Iowa 1972) (improper to discipline student athlete for riding in vehicle in which beer was found); *O'Connor v. Board of Education,* 65 Misc.2d 40, 316 N.Y.S.2d 799 (1970) (improper to discipline student athlete for consumption of beer

after school hours and after athletic season is over).

We also note that § 22–32–109(1)(w), C.R.S. (1988 Repl.Vol. 9) requires a school district to adopt "written policies" which may relate to "discipline" and "written procedures ... for the suspension and expulsion" of students, "which procedures shall afford due process of law to pupils, parents, and school personnel." Copies of such policies and procedures, as well as any changes to them, must be provided to each student and posted in each public school in the district. Defendants concede that the pertinent policy here falls within the ambit of this statute.

■ Further, even without such a statutory requirement, a school district may not discipline a student for violating a school regulation unless the student has previously been fairly apprised of that regulation. See *New Braunfels Independent School District v. Armke*, 658 S.W.2d 330 (Tex. App.1983) (oral policy prohibiting consumption of alcohol at school functions enforceable because it had been explained to student on several occasions).

Our review of the district's policy requires us to conclude that, on its face, the policy does not purport to restrict a student's consumption of alcohol, if such consumption occurs neither during the regular school day or at a district-sponsored function, unless that consumption "affects" the student during either of these occasions.

The policy here is specific; it prohibits the use or consumption of alcohol, or its possession or sale, *"during* the regular school day" or *"at* any District-sponsored activity." It also prohibits a student from being "affected by" any prior use or consumption *during* the school day or *at* any such activity. And, such prohibitions are applicable even if the school schedule or a district-sponsored activity, such as a field trip or an "away" athletic contest, takes the student "off the school premises."

Nothing in this policy, however, suggests that it is intended to regulate a student's activities during the period before or after the school day and at purely private locations in those instances in which the stu-

dent's activities have no effect upon him or her during the regular school day or at any district-sponsored function. The policy applies to the private consumption of alcohol only to the extent that the student is "affected by" such consumption sometime during the school day or at school activities. Hence, the trial court's summary judgment was based upon a faulty interpretation of the district's policy.

However, because the trial court initially announced its interpretation of the policy when it denied plaintiffs' application for preliminary injunction, defendants, in later seeking summary judgment, were not called upon to present their evidence as to the manner in which the term, "affected by," as used in the policy, has been previously interpreted. See *In re Suspension of Huffer*, 47 Ohio St.3d 12, 546 N.E.2d 1308 (1989). Nor have they been given an opportunity to establish that plaintiffs were aware of such interpretation. See *New Braunfels Independent School District v. Armke, supra.* Likewise, they have not had a full opportunity to establish that plaintiffs were, in fact, affected by their prior consumption of beer on the night of the incident, however the term, "affected by," may be interpreted.

Therefore, the court's dismissal of plaintiff's claims in which they contended that their actions did not violate the provisions of the district's policy cannot stand, and the cause must be returned to the trial court for further proceedings.

### III.

■ We reject plaintiffs' assertion that their reassignment to another high school for 90 days was the equivalent of a suspension for more than five days. Thus, the trial court did not err in dismissing that part of their claim in which they challenged defendants' failure to provide them with a formal hearing before the board of education before effecting their reassignment.

Section 22–33–105(2)(a), C.R.S. (1988 Repl.Vol. 9) authorizes a board of education to delegate to the principal of any school the right to suspend a student from

classes for not more than 5 days. The board itself may suspend a student for an additional ten days, or it may delegate this responsibility to its chief executive officer. Section 22–33–105(2)(b).

The board also has the authority to expel a student for the remainder of the school year. In such case, the board must afford the student an evidentiary hearing, and the student may appeal any order of expulsion to the juvenile court. Section 22–33–105(2)(c), C.R.S. (1988 Repl.Vol. 9).

None of these provisions speak to the subject of reassigning a student from one school within the district to another. They all apply only in those instances in which a student's education is interrupted. Absent such an interruption, a board of education and its officials are not required to comply with these statutes relating to suspension and expulsion.

Further, before the adoption of § 22–36–101, C.R.S. (1991 Cum.Supp.), which became effective on May 31, 1990 (after the reassignments here), a student had no right to attend any particular school within a district. Therefore, because Colorado law gave plaintiffs no right to attend Centennial, their temporary transfer to another high school gave rise to no claim, either under Colorado law or the federal constitution.

That part of the judgment dismissing plaintiffs' § 1983 claim based upon an alleged unlawful search and dismissing any claim based upon their reassignment to another high school is affirmed. Otherwise, the judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views contained herein.

JONES and DAVIDSON, JJ., concur.