The Honorable Bill Gwatney State Senator P.O. Box 156 Jacksonville, AR 72076-0156
Dear Senator Gwatney:
I am writing in response to your request for my opinion on the following question:
 What is the area of responsibility for public schools regarding discipline and liability? There is no clarity if it is from bus stop to school or only within 50 ft. of the actual school boundary. Of particular concern is when students are involved in a physical altercation. If said altercation occurs 51 feet from school boundary or bus stop, is the school no longer liable and if so can discipline action be taken?
RESPONSE
As a general proposition, school officials are responsible for maintaining discipline on school property and school buses and at school functions. A.C.A. §§ 6-18-505(b) and -506. School districts may further adopt disciplinary policies "to insure continued orderly operation of schools." A.C.A. § 6-16-307. I believe school districts might discipline students for conduct not occurring on school property or a school bus or at a school function only if such conduct might reasonably be characterized as undermining the "orderly operation" of the school. With respect to a school's potential liability for altercations occurring on or near school property, school districts enjoy qualified immunity from liability and suit pursuant to A.C.A. § 21-9-301, as do school employees from claims of negligence purportedly committed in the course of their duties. I also believe a school district is under no duty to protect pursuant to the Arkansas Civil Rights Act, A.C.A. § 16-123-101 et seq.
Notwithstanding state-law qualified immunity, a school district might still face liability for a violation of federal law pursuant to42 U.S.C. § 1983. However, district employees enjoy a qualified immunity from such liability unless their conduct violated clearly established law that a reasonable person would have known.
The rights and obligations of school districts with respect to student discipline are set forth in subchapter 5 of chapter 18 of title 6 of the Arkansas Code (Repl. 1999 Supp. 2001). Subsection 6-18-505(b) of the Code, contained within the School Discipline Act, provides:
 Every teacher is authorized to hold every pupil strictly accountable for any disorderly conduct in school or on the playground of the school, or on any school bus going to or returning from school, or during intermission or recess.
(Emphasis added.) Subsection 6-18-506, entitled the School Dismissal Act, provides in pertinent part:
* * *
 (b) Every school district board of directors shall adopt and file with the Department of Education written policies concerning the violation of school standards such as disrespect for teachers and classified school employees, vandalism, and other undesirable behavioral patterns.
 (c) Every school district board of directors in this state shall hold its pupils strictly accountable for any disorderly conduct in school, on the school grounds, in a school bus, or at any school function.
 (d) Each school district board of directors shall adopt written rules and regulations delineating its disciplinary policies.
(Emphasis added.) See also State Board of Education Standards forAccreditation of Public Schools § V(D) (providing that districts must develop and file written student discipline policies in accordance with Department of Education guidelines). Section 6-16-307 of the Code further empowers a school district "to adopt reasonable rules, regulations, and policies . . . to insure continued orderly operation of schools," including "the right of expulsion for student participation in any activity which tends, in the opinion of the board, to disrupt, obstruct, or interfere with orderly education processes."
Although the latter highlighted excerpt from these statutes is slightly broader than the former, they both suggest that a school's responsibility to maintain discipline does not extend beyond the geographical range of its property or, in the event of a function such as a field trip, the geographical range of its school-related activities. I have found nothing in the Code or any applicable regulation to support the suggestion that a school might be held responsible for events occurring beyond the range of its operations, including at a bus stop or within 50 feet of its property lines.
By statute, school districts are obligated to address in their discipline policies the issue of altercations between students. Specifically, A.C.A. § 6-18-502(b)(3)(A) (Supp. 2001) directs that student discipline policies acknowledge the offense of "[w]illfully and intentionally assaulting or threatening to assault or abuse any student or teacher, principal, superintendent, or other employee of a school system." However, in Ruddv. Pulaski County Special School District, 341 Ark. 794, 20 S.W.3d 310
(2000), the Arkansas Supreme Court made clear that a school district's duty to define this offense does not render the district subject to potential liability under the Arkansas Civil Rights Act, A.C.A. §16-123-101 et seq. (Supp. 2001). Looking for guidance to federal precedents, the court remarked:
 The United States Supreme Court has not extended the duty of protection beyond the cases of incarcerated prisoners and involuntarily committed mental patients; such a duty of protection should not extend to school officials because teachers would be constitutionally obliged to assume roles similar to policemen or even prison guards in protecting students from other students; here, no special relationship giving rise to a duty to protect against harm from private individuals existed by the State's action of putting the two students in contact with one another, despite the State's knowledge of a particular student's violent propensities.
341 Ark. at 795.
The question of whether a school is either obliged or allowed to enforce discipline for conduct occurring off school premises is somewhat more complicated. As previously noted, A.C.A. § 6-16-307(a) empowers school districts to adopt disciplinary rules designed "to insure continued orderly operation of schools." In my opinion, this statutory grant of authority would empower a school district to take disciplinary action for conduct occurring away from school if that conduct were of a sort that might reasonably be deemed to threaten the "continued orderly operation of schools." This reading of the statute seems to me fully consistent with one commentator's summary of what appears to verge on a judicial consensus regarding the extent of a school's power to discipline students for conduct occurring off school premises:
 It seems clear that the power of school authorities over pupils does not cease absolutely when the pupils leave the school premises. . . . It is axiomatic that all school rules must be reasonable. The test of the reasonableness of a school regulation affecting out-of-school conduct has usually, explicitly or implicitly, been whether the out-of-school conduct being regulated has a direct and immediate effect on the discipline or general welfare of the school.
* * *
 School punishment of pupils for out-of-school fighting and other violent or destructive acts has been held lawful, the courts easily finding a direct connection between such out-of-school misconduct and school discipline and safety.
Daniel E. Feld, Annotation, Right to Discipline Student for Conduct awayfrom School Grounds or Not Immediately Connected with School Activities,
53 A.L.R.3d 1124 (1973), at § 3 (footnotes omitted). See also Martinezv. School Dist. No. 60, 852 P.2d 1275, 1278 (Colo.App. 1992) ("In considering the district's policy here, we observe that a school district's regulation of students' conduct must bear some reasonable relationship to the educational environment; a school district cannot regulate purely private activity having no effect upon that environment.").
Applying both these general principles and the specific statutory authorization set forth at A.C.A. § 6-16-307(a) to the specific examples recited in your request, I believe school officials are empowered to impose reasonable disciplinary measures upon students for fighting at a school bus stop or in sufficient proximity to a school to disrupt its "orderly operation." Although only a finder of fact could determine whether a fight occurring 51 feet off school property was sufficiently close to the school to disrupt its operations and hence to warrant disciplinary action, I strongly suspect that a court would conclude it was. In the above referenced A.L.R. annotation, the commentator offered the following analysis of the court's ruling in Deskins v. Gose,85 Mo. 485 (1885), which upheld a school rule forbidding quarreling, fighting and the use of profanity among students either at school or anywhere on their way home from school:[1]
 The court applied the proposition that school authorities can punish students for acts done out of the schoolroom while the students are returning to their homes, and therefore before parental control is resumed, if the students' misconduct reaches into the school, and is detrimental to the good order and the best interests of the school. Reversing a judgment for the plaintiff student in an action to recover damages for injuries inflicted by the defendant teacher in whipping the student for violation of the school rule, the court reasoned that the effects of quarreling, fighting, and the use of profane language by the students on their way home would necessarily be felt at school, engendering hostile feelings among students and among their respective parents, and destroying the harmony and good will which should always exist among students who are daily brought into contact with each other at school.
Feld, supra at § 9. Without subscribing to the Deskin court's possibly archaic conception of custody as somehow crucial to the right to discipline, I agree with the court's general suggestion that the operative inquiry should be whether misconduct committed off school premises has negative repercussions in the school environment. If so, I believe A.C.A. § 6-16-307(a) would support school officials in imposing disciplinary measures on those who misbehaved.
With respect to the issue of a school's potential liability, as the court acknowledged in Rudd, 341 Ark. at 802, a claim of negligence against a school district for failure to protect would be subject to the following qualified immunity from liability and suit:
 It is declared to be the public policy of the State of Arkansas that counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents and employees.
A.C.A. § 21-9-301 (Supp. 2001). Furthermore, as the court noted in Wairev. Joseph, 308 Ark. 528, 534, 825 S.W.2d 594 (1992):
 In Cousins v. Dennis, 298 Ark. 310, 767 S.W.2d 296 (1989), the court interpreted Ark. Code Ann. 21-9-301 to also provide tort immunity to school employees for their liability for negligent acts arising out of the performance of their official duties. See also Matthews v. Martin, 280 Ark. 345, 658 S.W.2d 374 (1983).
But see Ark. Op. Att'y Gen. No. 2000-325 (opining that qualified immunity might not apply with respect to torts committed during school trips in other jurisdictions).
Although I consider the possibility of success in such a claim remote, a disgruntled student subjected to discipline might in theory elect to proceed against a school district alleging some violation of federal law, as opposed to state tort law. Section 1983 of title 42 of the United State Code provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
State law immunities do not override a cause of action under this statute. See Monell v. New York City Department of Social Services,436 U.S. 658 (1978). However, individual district employees enjoy a qualified immunity from any action alleging such a violation of federal law. See Mosier v. Robinson, 722 F.Supp. 1245 (E.D. Ark. 1989). As I stated in Ark. Op. Att'y Gen. No. 1999-363:
 Under the doctrine of qualified immunity, an individual is immune from trial if the actions complained of were taken in good faith in the performance of one's duties, and the acts do not violate any clearly established constitutional right. Harlow v. Fitzgerald, 457 U.S. 800
(1982). The test for the applicability of qualified immunity turns upon the "objective legal reasonableness of the action," assessed in light of legal rules that were "clearly established" at the time the action was taken. See Anderson v. Creighton, 483 U.S. 635 (1987). The immunity is "qualified" because it does not obtain where the activity is in violation of clearly established law that a reasonable person would have known. Robinson v. Beaumont, 291 Ark. 477, 725 S.W.2d 839 (1987); Matthews v. Martin, 280 Ark. 345, 658 S.W.2d 374 (1983).
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] The court did not discuss why the rule did not further ban such misconduct on the way to school. It may be that the school felt that the parent retained custody until the child actually arrived at school, whereupon custody transferred to the school until the child was delivered back to the parent. Since the advent of school busing, this distinction would not appear invariably to apply.