KEVIN J. KNIGHT, a Minor, by his Father and Next Friend, Joseph Knight, Plaintiff-Appellant, *v.* BOARD OF EDUCATION OF TRI-POINT COMMUNITY UNIT SCHOOL DISTRICT NO. 6J *et al.*, Defendants-Appellees.—(American Civil Liberties Union, Amicus Curiae; Illinois State Board of Education, Amicus Curiae.)

Fourth District   No. 13080

Opinion filed May 27, 1976.

604

CRAVEN, J., dissenting.

Law Offices of Faraday J. Strock, of Pontiac (Ronald V. Hirst, of counsel), for appellant.

Kenneth L. Strong, of Thompson and Strong, of Pontiac, for appellees.

Bowen Tucker and Howard Eglit, both of Chicago, for *amicus curiae* American Civil Liberties Union.

Gary E. Kerr, Assistant Legal Adviser, of Illinois Office of Education, for *amicus curiae* Illinois State Board of Education.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiff Kevin J. Knight, a minor, by his father and next friend, brought suit in the Circuit Court of Livingston County seeking declaratory and injunctive relief against defendants Board of Education of Tri-Point Community Unit School District No. 6J: Glenn Anderson, William E. Malone, Leon Malone, George Haley, H. Roy Harms, Donald Metz, and Thomas V. McGinnis, individually, and as the Board of Education of Tri-Point Community Unit School District No. 6J; Howard Jackson; and E. Lesley Conkling. A motion by defendants to dismiss the complaint was

denied. After a bench trial on the merits, the trial court entered a judgment for the defendants denying all requested relief. Plaintiff appeals. Pursuant to leave of this court, the American Civil Liberties Union, Illinois Division, and the Illinois State Board of Education have filed briefs *amicus curiae* suggesting that the judgment be reversed.

Plaintiff was a senior at the defendant district's high school during the 1973-74 school year. He did not attend classes on April 25 and 26, 1974. The school administration did not excuse the absences. In plaintiff's complaint and at trial, he contended that the refusal to excuse these absences deprived him of procedural due process of law under the State and Federal constitutions. He has abandoned this position on appeal, relying rather on his other contentions that the consequences imposed upon him as a result of the refusal of the school administration to excuse the absences deprived him of substantive due process of law and equal protection of law contrary to the Fourteenth Amendment and article I, section 2 of the Illinois Constitution of 1970 and otherwise violated his legal rights. On the days plaintiff was absent, the defendant school district had in force the following regulation:

> "Under an unexcused absence, makeup work shall be done without credit and grades shall be lowered one letter grade per class."

The complaint alleged that plaintiff's grades were lowered two letter grades per class for the final quarter of the year as a result of the policy. The complaint requested that defendants Jackson, the district superintendent, and Conkling, the school principal, be ordered by writ of mandamus to have plaintiff's grades recomputed for the quarter without consideration being given to the absences; that the old grades be ordered expunged; that the policy set forth in the rule be declared void and that all defendants be enjoined from enforcing the rule.

During the school quarter in question, plaintiff was enrolled in business English, photography, physical education and "food products management and service." The latter course was taught at a vocational center at nearby Pontiac. The teacher for that course did not consider the unexcused absences in grading plaintiff. The teachers in the other three courses testified that because of the school rule on unexcused absences, they lowered plaintiff's grade one but not two letters in their courses. The photography grade was lowered from B- to C, business English C to D, and physical education B to C.

Defendant Jackson testified that he considered truancy to be a serious problem and that he considered the grade reduction method the best sanction to impose to combat truancy. He considered corporal punishment and suspension to be too drastic and unworkable. He further stated that after-school detention was also unworkable because 80% of the

students were transported to and from school by buses and that it would be difficult to provide transportation for the detainees. James Langan, superintendent of an adjacent district, testified that he also considered truancy to be a serious problem, difficult to deal with, and that he felt that a policy of grade reduction by school rule applicable to all pupils rather than a discretionary application by each teacher was the best method of handling the problem. Kenneth Midkiff, co-ordinator of student affairs for the office of the State superintendent of public instruction, on the other hand, testified that he considered the rule to be poor educational policy and that a more reasonable method of imposing sanctions for truancy would be to give the truant a failing grade for the day and to supplement the punishment with detention.

In ruling for the defendants, the trial judge stated that he did not personally agree with the wisdom of the rule but did not find it to be patently unreasonable or arbitrary.

The *amici curiae* join plaintiff in arguing that the defendant district's rule on unexcused absences violates the unexcused pupil's substantive due process rights under both State and Federal constitutions and that in this case certain of plaintiff's grades were so affected by the rule as to deprive him of substantive due process. As applied to the actions of a State agency upon an individual, the Illinois due process clause guarantees the same rights as does the due process clause of the Fourteenth Amendment. (See Ill. Ann. Stat., Ill. Const., art. I, §2, Constitutional Commentary (Smith-Hurd 1971).) We are not advised of any case directly in point with the instant case.

Both due process clauses protect against a deprivation of "life, liberty or property without due process of law." The substantive rights which plaintiff claims to have been violated in this case are incident to the receipt of an education. The Illinois Constitution of 1970 provides, in part:

"Goal-Free Schools.

A fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities.

The State shall provide for an efficient system of high quality public educational institutions and services. Education in public schools through the secondary level shall be free." Ill. Const., art. X, §1.)

In *Goss v. Lopez*, 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729, the Court affirmed an order of a district court enjoining an Ohio school district from suspending two pupils. A State statute authorized school districts to suspend pupils for a period not to exceed 10 days for misbehavior. Neither the legislature nor the school district had implemented the legislation with procedural rules for notice and hearing prior to suspension. Ohio statutes, like the Illinois constitutional provision on

education, provided that all youths of certain age were entitled to a free public school education. The court reasoned that the knowledge and skill to be gained by the education guaranteed by the State was a property right and that a suspension from school impaired the ability to gain knowledge and skill during the suspension, thus impairing that property right. The court also stated that the damage to the pupil's reputation resulting from a permanent record of the alleged misconduct was an impairment of the pupil's liberty. Because the pupil's property rights and liberty had been impaired without a hearing under reasonably defined rules of procedure, the court held that they had been deprived of procedural due process of law. Similar rights, incident to the receipt of an education, granted by the State of Illinois to its youth would also be entitled to the protection of procedural due process.

■■ In *Wood v. Strickland,* 420 U.S. 308, 43 L. Ed. 2d 214, 95 S. Ct. 992, a suit under 42 U.S.C. §1983 (1970) also brought on behalf of suspended pupils, although ruling that no grounds for relief under that statute existed in that case, the Court stated that public school pupils have both substantive and procedural rights. In *Cook v. Edwards* (D. N. H. 1972), 341 F. Supp. 307, a court invalidated an indefinite expulsion of a public school pupil who had arrived at school intoxicated, on the grounds that the disparity between the severity of the penalty and damage caused by the infraction was so great as to deprive the pupil of substantive due process. Dicta in *Lee v. Macon County Board of Education* (5th Cir. 1974), 490 F.2d 458, also a school expulsion case, indicated an approval of the theory. The rights incident to an education being protected in these cases were the same as those granted protection in *Goss v. Lopez.* We thus conclude that such rights are protected by substantive as well as procedural due process.

■■ In the case under consideration the incident of the receipt of an education claimed to be impaired was not the opportunity to attend class but the receipt of grades, a measure which is considered by institutions of higher learning in determining who to admit and by employers in deciding who to hire. In *Goss v. Lopez* the Court noted the impairment of educational and employment opportunities that arise from a permanent school record of derogatory information about a pupil. The same is true of lower grades. Despite the analogy that can be drawn between the effects of pupil expulsion and the reduction of a pupil's grades, however, we are most reluctant to intervene in the grading process. Few courts have done so. Where a grade is dispensed by a teacher within that teacher's subjective discretion, we can see no justification for court intervention. In *Connelly v. University of Vermont & State Agricultural College* (D. Vt. 1965), 244 F.Supp. 156, a complaint by a former pupil at a State institution seeking that the court compel the institution to readmit

the pupil was ruled to state a cause of action when it alleged that the pupil had been dismissed for failing a course in which the instructor had determined early in the course to flunk the pupil regardless of his work. The opinion did not discuss the due process clause but termed the instructor's actions as arbitrary and capricious. There the student's grade was predetermined rather than being a subjective determination after a view of all of the record. Here the rule provided for a grade reduction without a subjective determination of a teacher. Under these circumstances a grading procedure could be used that would be so palpable as to justify court intervention.

■■ We deem the appropriate test to determine whether a rule such as the one in issue and its application deprive pupils of substantive due process to be that indicated in *Cook v. Edwards* and *Lee v. Macon County Board of Education*. That test is to weigh the severity of the punitive effect of the sanction against the severity of the conduct sanctioned. Here, the rule providing for one letter grade reduction for each day missed was harsh. The record indicates that the rule had been rescinded at time of hearing, making the question of its validity moot. Courts are not required to review questions of the refusal to grant declaratory or injunctive relief where the relief sought involves a matter that is now moot. (*Thurman v. Department of Public Aid*, 25 Ill. App. 3d 367, 323 N.E.2d 502.) Sometimes a reviewing court may choose to rule on such a question if it concerns a matter of public interest which is likely to reoccur and upon which public officials need guidance. (*People v. Labrenz*, 411 Ill. 618, 104 N.E.2d 769.) Although at least some of that criteria are present in the instant case, we choose not to rule upon the validity of the rescinded rule because of our reluctance to intervene in the process of administering grades in the public schools.

■■ The propriety of the action of the district in grading defendant in business English, photography, and physical education, on the other hand, is a live issue which we must decide. The three teachers who did this grading considered the rule but did not apply it in its full severity. We do not find the reduction in plaintiff's grades by one letter grade for a period of one quarter of the year in three subjects in consequence of two days of truancy to be so harsh as to deprive him of substantive due process. We note that any damage to plaintiff was somewhat remote. He was admitted the next year to a junior college, the only school to which he sought admission and later dropped out. Nevertheless, we deem the subsequent disadvantage he might receive from the lower grades to be a sufficient showing of damage to a property right. *Goss v. Lopez.*

Plaintiff and *amici curiae* argue that he is deprived of substantive due process and equal protection of the law because there is no rational relationship between grades and the misconduct of truancy. They

contend that grades must be given in public schools solely on the basis of "scholastic attainment." No court decisions are cited but they rely on an administrative decision of the Commissioner of Education of the State of New Jersey which in turn cites no cases. That decision held invalid a rule of a New Jersey public school providing that pupils would receive a grade of zero for each day of unexcused absence. The rule there condemned appears to be similar to the practice advocated here by witness Midkiff as being an acceptable alternative to the harsher rule of the defendant school district. The opinion quoted from another Commissioner's opinion which had stated that any system of grading had limitations and to incorporate disciplinary sanctions into the system compounded the difficulty. Plaintiff also cites educational text authority holding that a commingling of disciplinary sanctions within the system of grading is not sound educational policy.

The courts are not the forum for determining the best educational policy. In determining whether there is a rational basis between misconduct of pupils and the grades given to them we must determine what the grades are taken to represent. Most high school grading systems have commingled factors of pupil conduct with scholastic attainment in rendering grades. It is difficult to see how grading in physical education can be sensibly done without consideration being given to the pupil's conduct and effort. These factors are often considered in other subjects as well. Particularly among inept students, it is common to give a higher grade to those who attend class and try than to the laggard truant. Several of the teachers testifying here indicated that they considered effort and conduct in determining grades. Truancy is a lack of effort and plaintiff here exhibited a lack of effort. There was, therefore, a sufficiently rational connection between the grade reduction he was given and his truancy to satisfy the requirements of both equal protection and substantive due process.

In *Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 39 L. Ed. 2d 52, 94 S. Ct. 791, the court ruled invalid a Cleveland public school rule that required that all pregnant teachers begin maternity leave five months before expected date of delivery and not return until three months after the birth of the child. The court held that the rule created an irrebuttable presumption which was not necessarily true that a teacher was incapacitated five months before delivery. Plaintiff contends, by analogy, that defendant district's rule on unexcused absences creates an invalid irrebuttable presumption that the pupil's "academic achievement" is reduced by one letter grade for a quarter by missing one class period. The teachers treated the rule not as an irrebuttable presumption of an exact amount of damage done by missing one class but as a mandate to give consideration to the truancy in rendering a grade and mitigated the effect

of the rule by a partial exercise of discretion. In *La Fleur* the court noted that the effect of the rule unduly penalized a teacher from deciding to have a child. Here the rule operated to sanction misconduct on the part of plaintiff in a manner that we have deemed to be not unduly harsh.

*Amici curiae* contend that a school district in this State is powerless to impose any sanction upon a pupil for truancy. The provision of the Illinois School Code concerning compulsory attendance (Ill. Rev. Stat. 1973, ch. 122, par. 26—1 *et seq.*) imposes a duty upon parents and custodians of children of certain ages to "cause" the children to attend school and imposes a criminal sanction upon those parents and custodians who fail to do so. The legislation also provides for district truant officers who have a duty to investigate truancies and to file criminal complaints against those parents and custodians whom they believe to be in violation of the legislation. *Amici curiae* concede that school districts have power to make rules and regulations in regard to discipline (Ill. Rev. Stat. 1973, ch. 122, pars. 10—20.5, 24—24). They argue, however, that the specific grant of power in the portions of the School Code concerning compulsory attendance should be construed as a legislative intent that the power granted there was intended to be the only power to punish truancy following the principle *expressio unius est exclusio alterius. (Bowes v. City of Chicago*, 3 Ill. 2d 175, 120 N.E.2d 15.) The two legislative provisions cover different areas, however. The provisions for rules and discipline give the district power to punish pupils. The provision for compulsory attendance creates a legal obligation on parents and custodians and provides for its enforcement. The legislation giving the districts power to make disciplinary rules empowers them to punish pupils for unexcused absences.

Plaintiff maintains that the district's rule on unexcused absences and the action of the district in reducing plaintiff's grades violate section 11 of article I of the Illinois Constitution of 1970. That section is headed "Limitation of Penalties After Conviction" and is listed with other rights pertaining to criminal proceedings. It is not applicable here. The State Board of Education argues that defendant district's rule was invalid because it interfered with the district's ability to maintain services for handicapped children. (Ill. Rev. Stat. 1973, ch. 122, par. 14—4.01.) It contends that truants could be "maladjusted children" (Ill. Rev. Stat. 1973, ch. 122, par. 14—1.03) who require treatment based on diagnosis rather than a sanction applied equally to all pupils. Such a requirement would make it difficult to have any objective disciplinary rules. In any event there is no showing that plaintiff was a maladjusted child nor that any such children had been affected by the rule.

Defendants maintain that the complaint failed to state a cause of action for either an injunction or declaratory relief. They argue that the denial of

the motion to dismiss the complaint was error. Plaintiff contends that defendants cannot now raise the issue of that ruling because they did not cross-appeal, citing *People ex rel. Village of Lake Bluff v. City of North Chicago*, 5 Ill. App. 3d 142, 282 N.E.2d 780. In view of the disposition we make of this case, we need not decide this question.

The judgment appealed from is affirmed.

Affirmed.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

The majority opinion persuasively states a case for a result exactly opposite the conclusion reached.

The rule of the school district required that for each day of unexcused absence, makeup work be done without credit and the academic grade be lowered one letter grade per class. Either the superintendent or the principal in his discretion would determine whether the absence was excused or unexcused. If the determination was made that the absence was unexcused, the teachers would be notified and the grades were to be lowered. The record shows that this arbitrary policy was enforced at times but not at all times. In this particular case, one teacher at a vocational center did not follow the policy—did not lower the grade; the other three teachers involved applied the policy only half way. Each of them testified that they thought the rule of the school interfered with their prerogative as a teacher and that it was harsh.

The majority opinion seems to argue that courts are not a proper forum for interfering with the internal affairs of school districts, and I agree. It was long ago determined, however, that constitutional rights are not shed upon entrance through a school door. (*Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733.) It has also been determined that the Fourteenth Amendment applies to the States and protects all of us against instrumentalities of the States as well as the State itself. This includes boards of education. (*West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 87 L. Ed. 1628, 63 S. Ct. 1178.) It has also been determined that a person's good name, reputation, honor, or integrity constitutes a protectible interest. I know of no *de minimis* rule in this area. *Board of Regents v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.

In *Goss v. Lopez*, 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729, we find the basic constitutional guidelines applicable to, and, in my opinion, determinative of, this case. Plaintiff has a constitutional right and that constitutional right was taken away by an arbitrary rule without any

semblance of procedural due process. The rule itself was a denial of substantive due process. We are not invited to look at the weight of the interest asserted but only to determine whether the interest sought to be protected is of such a nature as to require protection.

In this case, the plaintiff's quarterly grades were reduced; the record is clear that the reduction of the quarterly grades adversely affect the final grade. The final grade constitutes a record that purports to measure academic attainment. We should take judicial notice of the fact that prospective employers as well as institutions of higher learning concern themselves with true academic achievement.

I would reverse the judgment of the circuit court of Livingston County and remand this case with directions to enter a judgment declaring the rule invalid.