Deborah E. Katzman, a minor, by her parents and natural guardians, Ronald M. Katzman and Marjorie C. Katzman, Appellees *v.* Cumberland Valley School District, Appellant.

Argued April 30, 1984, before Judges ROGERS, MAC-PHAIL and BARBIERI, sitting as a panel of three.

*Richard C. Snelbaker, Snelbaker, McCaleb & Elicker,* for appellant.

*James W. Evans, Goldberg, Evans & Katzman, P.C.,* for appellees.

OPINION BY JUDGE BARBIERI, August 8, 1984: ·

Cumberland Valley School District (District) appeals here alleging error in a decision of the Common Pleas Court of ·Cumberland County holding improper the action of the Board of School Directors of the Cumberland Valley School District (Board) ·in reducing for disciplinary reasons the earned marks: of a high school student, Deborah E. Katzman (Debbie), and ordering her ''grades for the second marking period of the 1982-83 school year readjusted ·to reflect the marks she actually earned.''

The parties agree that this case is one of first impression in this Commonwealth: Simply stated, we are asked to determine the legality of the grade reduction policy as administered here by the Board.

The facts are undisputed.

On December 3, 1982, Debbie, an eleventh grade student at Cumberland Valley High School, while on a field trip to New York City with her Humanities Class, joined four other students in ordering and drinking a glass of wine in a restaurant. When questioned later by school authorities she admitted the incident whereupon she was suspended for five days,

excluded from classes, expelled from the cheer lead-
ing squad, prohibited from taking part in school ac-
tivities during the five days' suspension period and
was later permanently expelled from the National
Honor Society. Under the District's disciplinary
policy a further penalty of grade reduction was im-
posed. This policy is stated as follows:

> Suspension and Expulsions . . .
> 6240.9d Reduce grades in all classes two per-
> centage points for each day of suspension.
> , The grades are to be reduced during the mark-
> ing period when the in-school or out of school
> suspension occurred. In lieu of a two per-
> centage point reduction the student may be
> . assigned to a supervised Saturday work pro-
> gram provided the parent(s) and student ac-
> cept the conditions of this option.

In imposing the penalty pursuant to this "policy,"
she was advised that, as a consequence of this sus-
pension, her grades in each subject for the entire
second marking period would be reduced by ten
points, two points for each day of suspension,[1] but
that the alternative of Saturday work in lieu of sus-
pension would be denied her because her transgres-
sion was a violation of District's policy an "alcohol
abuse." There appears in the record as Exhibit 1
the following:

> Drug and Alcohol Prevention and Abuse
> The policy of the Cumberland Valley School
> District prohibits any student to possess, to
> use, to sell, to deliver, or to give to another
> person, or to have consumed any narcotic, dan-

---

[1] Appellant advises that at the end of the marking period (9
weeks) all grades are compiled for a gross score of 94 (out of a
possible 100) ; that the grade reduction policy (2% x 5) would
reduce the 94 by 10 points or 84.

gerous drug, marijuana, or alcoholic beverage or any pill, capsule, powder, liquid, or other substance of whatever form or texture, *which may adversely affect the health, safety, or welfare of any student,* including but not limited to stimulants or depressants, prior to or during participation in a school activity. The above policy is also in effect when any violations occur on any property owned or leased by the Cumberland Valley School District. (Emphasis added.)

Further in the record, apparently Exhibit No. 5, setting forth the "Saturday Work Program," there is included the following: "The Saturday Work Program option will not be offered to students that violate the district policies on smoking and drug and alcohol abuse."

Debbie and her parents as guardians (Appellees), before us here on appeal in a proceeding under the Local Agency Law,[2] have from the outset raised no procedural issues, nor have they contested any of the penalties imposed except only the issue as to the propriety of the grade reductions as punishment for her disciplinary infraction. We note in this connection that Debbie was a high achieving student, ranking tenth in a class of approximately 600 pupils, and that she had no record of disciplinary problems or prior offenses of any kind. The common pleas court terming the grade reductions and other punishments imposed "harsh" and "excessive,"[3] stated, however,

---

[2] 2 Pa. C. S. §752 and 42 Pa. C. S. §933(a)(2).

[3] The Court also stated:

From the outset we note that grades are not merely of fleeting interest; rather, they become a permanent record upon which all future educational opportunities are based.

that the nature of the punishment would have no effect in its decision invalidating the grade reductions on the basis that the Board's "policy" was in conflict with Section 12.6(f) of the Student Rights and Responsibilities Regulations adopted by the State Board of Education, 22 Pa. Code 12.6(f),[4] and, as we have noted, ordering that Debbie's grades as originally fixed by her teachers be reinstated.

---

[4] The regulation provides:

> Students shall be permitted to make up exams and work missed while being disciplined by temporary or full suspension within guidelines established by the board of school directors.

The Court stated:

> Nevertheless . . . we believe the unmistakable policy behind the regulation is that students suspended for disciplinary violations should not only be permitted to make up the work they miss, but also should receive credit for that work. For this reason, we believe that the Cumberland Valley School Board's use of grade reduction as a form of punishment is inconsistent with and antithetical to regulation 12.6(f).

> . . . .

> The board argues that the purpose of regulation 12.6(f) is only to insure that a suspended student receives instruction missed by reason of the suspension, but does not require such work to be counted for a grade. We disagree. If the state board of education meant only to extend to suspended students a chance to acquire the knowledge their classmates have received in their absence, there would be no reason to allow them to make up examinations as provided in regulation 12.6(f). While there are those who view examinations as a learning experience, the primary purpose of an examination has always been to measure a student's proficiency for purposes of assigning a grade. In short, we think it clear that the state board of education intends that suspended students receive grades for make up work. Clearly, Cumberland Valley School Board policy 6240.9d is in direct conflict with regulation 12.6(f).

Appellant contends here that the Board of School Directors, a local public school district such as the one in this case, has the "inherent right to determine the nature of discipline to be administered to students violating its codes of behavior," that neither Section 12.6(f) or any other provision in the Students Rights and Responsibilities Regulation contains any provision which places a limitation on the Board's "discretionary authority" to impose discipline, as in this case, for a violation of its policy with regard to alcohol. In this connection, Appellant points to Section 510 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §5-510, in which the Board of School Directors is empowered to "adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs and the conduct and deportment of all . . . pupils attending the public schools in the District. . . ." Appellant refers us to authorities, including decisions of this and other appellate courts of Pennsylvania[5] which we find helpful but not controlling or sufficiently persuasive to direct our disposition. Rather, it is our conclusion that there is no specific provision in State statutes, in the regulations of the State Board of Education or in prior decisions of our courts which we have been able to find in our research that specifically deals with and serves as a determinative

[5] *E.g., Commonwealth v. Hall,* Pa. Superior Ct. , 455 A.2d 674 (1983) (Conviction of parents for parent-induced truancy sustained) ; *Girard School District v. Pittenger,* 481 Pa. 91, 392 A.2d 261 (1978) (Regulations of Board of Education pertaining to student conduct and discipline authorized by the Legislature) ; *Abremski v. Southeastern School District,* 54 Pa. Commonwealth Ct. 292, 421 A.2d 485 (1980) (expulsion for period, but with alternative education by assigned home study and weekly in-school counselling).

guide to us in reaching a decision here. As a matter of first instance, therefore, we must decide the legality of a Board policy, not specifically authorized or proscribed by statute or regulation, which authorizes penalties, affecting and reducing educational standing, for infractions that are not education related.

We are aware, of course, as Appellant points out, that under Sections 510, 1317 and 1318 of the Public School Code of 1949,[6] a board of school directors may adopt "reasonable rules and regulations" regarding the "conduct and deportment" of pupils while under the supervision of the board and teachers; that teachers may exercise certain authority "as to conduct and behavior;" that suspensions may be meted out to pupils for "disobedience or misconduct" and that "in the absence of a gross abuse of discretion, courts will not second guess policies of the several boards of school directors," *Commonwealth v. Hall*, 309 Pa. Superior Ct. 407, 412, 455 A.2d 674, 677 (1983). Nevertheless, we cannot conclude that the Legislature in authorizing the adoption and enforcement of "reasonable rules and regulations" intended to sanction a grade reduction policy, without an optional make up program, for the kind of infraction involved here. Indeed, as the common pleas court in this case points out, there is in Section 12.6(f) of the Students Rights and Responsibilities Regulations[7] a provision indicating a legislative intent that educational make up be provided to a student for "exams and work missed while being disciplined by temporary

---

[6] 24 P.S. §§5-510, 13-1317, 13-1318.

[7] 22 Pa. Code 12.6(f). The Regulation was approved by our Supreme Court in *Girard School District v. Pittenger*, 481 Pa. 91, 392 A.2d 261 (1978).

or full suspension." The trial court reasoned that the "unmistakable policy behind the regulation is that students suspended for disciplinary violations should not only be permitted to make up the work they miss, but also should receive credit for that work." We believe, however, that the policy and the penalty here goes beyond the scope of making up for time lost, such as the five days of suspension. Here, rather, although the penalty was for the five days missed, the assessed penalty downgraded achievement for a full marking period of nine weeks. Of course, for college entrance and other purposes this would result in a clear misrepresentation of the student's scholastic achievement. Misrepresentation of achievement is equally improper and, we think, illegal whether the achievement is misrepresented by upgrading or by downgrading, if either is done for reasons that are irrelevant to the achievement being graded. For example, one would hardly deem acceptable an upgrading in a mathematics course for achievement on the playing fields. In this connection, we find inapt Appellant's example of downgrading for cheating. Cheating is related to grading.

We conclude, for the reasons stated, that the Board's policy and the manner in which it was exercised in this case represent an illegal application of the Board's discretion and that, therefore, as the trial court held, the grade reduction was improper. Accordingly, we will affirm the order of the common pleas court.

ORDER

Now, August 8, 1984, the decision and order of the Court of Common Pleas of Cumberland County in the above-captioned matter, 571 Civil 1983, dated June 10, 1983, is hereby affirmed.