Pamela SMITH, Charles Smith,
and Jean Smith, Plaintiffs,

v.

**SCHOOL CITY OF HOBART,**
**et al., Defendants.**

Civ. No. H85–798.

United States District Court,
N.D. Indiana,
Hammond Division.

Jan. 25, 1993.

---

Nancy M. Tiller, Merrillville, IN, for plaintiffs.

William J. Longer, Hobart, IN, for defendants.

## ORDER

LOZANO, District Judge.

This matter is before the Court on cross-motions for summary judgment filed by the Plaintiff, Pamela Smith ("Smith"), on July 28, 1986, and by the Defendant, School City of Hobart, Indiana (the "School") on September 29, 1986. For the reasons set forth below, the School's Motion for Summary Judgment is DENIED and Smith's Motion for Summary Judgment is GRANTED.

## BACKGROUND

The parties have stipulated to the facts. On March 25, 1985, Smith was a senior class student at Hobart Senior High School in Hobart, Indiana. On this date, Smith, with two other girls, left their fifth period class to go to their Medical Biology Class located at a medical center. On the way, the girls stopped at one of the other girls' homes and drank beer. After admitting to drinking the alcoholic beverage, Smith was suspended for five (5) days. The School reduced Smith's grades twenty percent (20%) in each class for the semester.[1] The student handbook provides that knowingly possessing or consuming alcoholic beverages or intoxicants of any kind subjects a student to suspension and/or expulsion. The handbook also provides for a grade reduction of four percent (4%) of the student's grade for the nine-week grading pe-

---

1. Smith need not exhaust her administrative remedies before bringing this action. *See Card-* *er v. Michigan City Sch. Corp.,* 552 F.Supp. 869 (N.D.Ind.1982).

riod for each class missed each day during suspension.

Smith alleges that her constitutional right to substantive due process was violated by the reduction of her grades during her suspension. Smith claims that the School's reduction of her grades was arbitrary, capricious, and excessive based on her actions and seeks damages and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988.

## DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *First Wis. Trust Co. v. Schroud,* 916 F.2d 394, 398 (7th Cir.1990). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991); see also *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the Court must read all facts in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514; *Richardson v. Penfold,* 839 F.2d 392, 394 (7th Cir.1988).

■ Before diving into the murky waters of substantive due process, it is necessary to first note that school discipline is not an area in which courts lay claim to any expertise, nor should consider lightly. As so aptly stated by Judge Mills,

> School discipline is an area which courts enter with great hesitation and reluctance—and rightly so. School officials are trained and paid to determine what form of punishment best addresses a particular student's transgression. They are in a far better position than is a black-robed judge to decide what to do with a disobedient child at school. They

can best determine, for instance, whether a suspension or an after-school detention will be more effective in correcting a student's behavior. Because of their expertise and their closest situation—and because we do not want them to fear court challenges to their every act—school officials are given wide discretion in their disciplinary actions.

*Donaldson v. Board of Educ.,* 98 Ill. App.3d 438, 53 Ill.Dec. 946, 947, 424 N.E.2d 737, 738 (1981).

■ With this in mind, the School acknowledges that students do have constitutional rights,[2] but contends that a public high school grade reduction for consuming alcohol during school hours does not violate a student's right to substantive due process under 42 U.S.C. § 1983. The School relies on *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), in support of its argument. Similar to the present case, *Wood* involved two high school students who were expelled from school for violating a school regulation prohibiting the use or possession of intoxicating beverages at school or school activities. *Id.* at 311, 95 S.Ct. at 995. Specifically, the students spiked punch with malt liquor, which was served to students and parents at an extracurricular activity. *Id.* Like Smith, the students brought an action under 42 U.S.C. § 1983, claiming that such expulsion violated their rights to due process. *Id.* at 309–10, 95 S.Ct. at 994–95. The district court directed a verdict for the school officials. *Id.* at 310, 95 S.Ct. at 995. The Court of Appeals reversed the decision, and based upon their interpretation of the school's regulations, found that the school officials were acting in violation of the students' substantive due process rights. *Id.* The Supreme Court vacated the Court of Appeals' decision, admonishing the lower court not to substitute a school's interpretation of their own rules with the court's interpretation:

> "It is not the role of the federal courts to set aside decisions of school adminis-

---

**2.** Smith has a claim of entitlement to a public education pursuant to Ind.Code Ann. § 20–8.1–3–17 (West 1984), which provides that education is compulsory from the ages of seven (7) to sixteen (16). *See Goss v. Lopez,* 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975).

trators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. (citations omitted) But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and § 1983 was not intended to be a vehicle for federal court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees."

*Id.* at 326, 95 S.Ct. at 1003.

■ But at issue in this case is not whether it is proper for a court to substitute its judgment for that of a school administrator. Rather, at issue is whether the School's rule is constitutional. Students do not " 'shed their constitutional rights' at the school house door." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). The due process clause forbids arbitrary deprivations of liberty. *Id.* "Where a person's good name, reputation, honor, or integrity is at stake because of the what the government is doing to him," the minimal requirements of the due process clause must be satisfied. *Id.* In *Goss v. Lopez*, the United States Supreme Court held that students have procedural due process rights to notice and a hearing before suspension. *Id.* at 579, 95 S.Ct. at 738–39. In *Goss*, "[s]chool authorities ... suspended appellees from school for periods of up to 10 days based on charges of misconduct. If sustained and recorded, those charges could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment." *Id.* at 574–75, 95 S.Ct. at 736. It is thus clear that a student's academic record has importance not only as to the student's high school or grade school standing, but also affects the student's ability to enter the college of his choice, obtain postgraduate degrees, and eventually affects the student's chances of obtaining a job. Academic records are also routinely examined when applying to the military or other government jobs.

The School's rules regarding suspensions are as follows:

All absences except those set forth in the previous section, *Excused Absence*, shall be considered unexcused absences.

1. Students will be permitted to make up work missed during such absences

2. Unexcused absences are, but not limited to, the following:

 a. Suspensions "out-of-school"

 b. Truancy

3. Unexcused Absences Due to Disciplinary Suspension(s)

 a. Students who receive an "in-school" suspension will be permitted to make up classroom work while in suspension, but will suffer grade deduction. Failure to do make-up work will result in a loss of learning for the day(s) of suspension.

 b. Students who receive an "out-of-school" suspension will be permitted to make up their class work for the day(s) of suspension, and will suffer grade deduction.

4. All unexcused absences, except truancy, will be assessed a 1% grade deduction for each class missed during the week of the incident.

\* \* \* \* \* \*

*In–School Suspension*

1. Students will attend school but in a special room during the school day.

2. The student will do work assigned by the classroom teacher and have no other privileges such as library passes, convocations or other extra-curricular activities.

3. The detention room will be supervised.

4. There will be a 2% grade deduction for the 9–weeks grading period.

*Out-of School Suspension*

1. Students will have the opportunity to make up work in the time designated by the teacher.
2. Student must forfeit all school activities during the period of suspension.
3. Student will suffer a 4% grade deduction for each class missed during the time of suspension, to be deducted for the 9–weeks grading period.

*Classroom Discipline*

1. Students may be suspended from classroom for various reasons. Before doing so, teachers should make out a referral slip and conferences should be set up with parents and/or a counselor and administrator.
2. If a student is suspended from a class, the teacher must provide class work for the student to work on while in suspension.
3. Grade deduction while in suspension is 2% per each day in that status.

Smith claims that the School violated her substantive due process rights when it[3] reduced her grades by twenty percent (20%) for the nine-week grading period. She argues that the use of academic sanctions for nonacademic misconduct constitutes arbitrary and capricious action, as the penalty was not rationally related to the misconduct and not rationally related to the disciplinary purpose. Moreover, Smith avers that the School's imposition of both a suspension and grade reduction amounted to excessive double punishment. Although it is not patently clear, it appears that Smith's grades were reduced by four percent (4%) for each class missed during the time of her suspension, a total of five days, because she was punished with out-of-school suspension, as opposed to in-school suspension.

Conversely, the School argues that a rational relationship between the grade reduction and the use of alcohol during school hours exists, namely "it is that the use of alcohol during school hours, as occurred here, affects adversely the academic accomplishment of the student user." (Defendant's Brief at 6) In support of its

position, the School cites *Knight v. Board of Educ.*, 38 Ill.App.3d 603, 348 N.E.2d 299 (1976). In *Knight,* the plaintiff, a senior in high school, did not attend classes for two days. *Id.* 348 N.E.2d at 300. The school administration did not excuse the absences. *Id.* On the days the plaintiff was absent, the school district had in force the following regulation: "Under an unexcused absence, makeup work shall be done without credit and grades shall be lowered by one letter grade per class." *Id.* at 301. As a result of this policy, the plaintiff's grades were lowered two letter grades per class for the final quarter of the year. *Id.* The plaintiff filed suit, requesting a writ of mandamus to have his grades recomputed for the quarter without consideration being given to the absences, that the old grades be ordered expunged, that the policies set forth in the rule be declared void, and that all the defendants be enjoined from enforcing the rule. *Id.*

The *Knight* court recognized that students do have substantive due process rights, and stated that the test for a deprivation of such rights is "to weigh the severity of the punitive effect of the sanction against the severity of the conduct sanctioned." *Id.* at 303. In applying this test, the court held that

> [w]e do not find the reduction in plaintiff's grades by one letter grade for a period of one quarter of the year in three subjects in consequence of two days of truancy to be so harsh as to deprive him of substantive due process. We note that any damage to plaintiff was somewhat remote. He was admitted the next year to a junior college, the only school to which he sought admission and later dropped out.

*Id.*

However, the *Knight* court did not pass on whether the school regulation was a violation of the plaintiff's substantive due process rights as the rule had been rescinded before appeal. *Id.* Accordingly, the *Knight* court was only evaluating the severity of the punishment imposed upon the

---

**3.** The parties stipulated that her grade was reduced for the *semester,* but the out-of-school suspension rule provides for a grade deduction for the nine-week grading period.

plaintiff in this case, and not the validity of the rule itself. Further, this Court is more persuaded by Justice Craven's dissenting opinion, in which he stated:

> ... The rule itself was a denial of substantive due process. We are not invited to look at the weight of the interest asserted but only to determine whether the interest sought to be protected is of such a nature as to require protection.

> In this case, the plaintiff's quarterly grades were reduced; the record is clear that the reduction of the quarterly grades adversely affected the final grade. The final grade constitutes a record that purports to measure academic attainment. We should take judicial notice of the fact that prospective employers as well as institutions of higher learning concern themselves with true academic achievement.

> I would reverse the judgment of the circuit court of Livingston County and remand this case with directions to enter a judgment declaring the rule invalid.

*Id.* at 305. It is also important to note that the majority in *Knight* sustained the student's grade reduction because it found that the teachers retained the discretion to decide whether or not to lower the student's grade one letter grade per class due to an unexcused absence despite the mandatory language of the rule. *Id.* at 302–03. Although it did not have to decide the constitutionality of the rule, the court stated, "[w]here a grade is dispensed by a teacher within the teacher's subjective discretion, we can see no justification for court intervention." *Id.* If a rule provided for a grade reduction without a subjective determination of a teacher, the Court opined that, "[u]nder these circumstances a grading procedure could be used that would be so palpable as to justify court intervention." *Id.* Thus, the *Knight* court intimated that the rule before it may be invalid, even if its application was not unduly harsh.

 It is well settled that a school may adopt policies that are reasonable and bear a rational relationship to the school's role in providing a public education. *Arnold v.* *Carpenter*, 459 F.2d 939, 943 (7th Cir. 1972); *Hamer v. Board of Educ.*, 66 Ill. App.3d 7, 22 Ill.Dec. 755, 757, 383 N.E.2d 231, 233 (1978); *Missouri ex rel. Miller v. McLeod*, 605 S.W.2d 160, 162 (Mo.App. 1980); *Hamer v. Board of Educ.*, 66 Ill. App.3d 7, 22 Ill.Dec. 755, 757, 383 N.E.2d 231, 233 (1978); *Missouri ex rel. Sageser v. Ledbetter*, 559 S.W.2d 230, 234 (Mo.1977); *Dorsey v. Bale*, 521 S.W.2d 76 (Ky.App. 1975). Such policies include the advancement of education, discipline, and the orderly operation of the schools.

In Indiana, a school corporation is administered by a "governing body" which means any institution charged by law with the responsibility of administering the affairs of a school corporation. Ind.Code Ann. § 20–8.1–1–2 (West 1984). The school corporation delegated the following authority:

(a) Each teacher and any of the other school personnel shall, when pupils are under his charge, have the right to take any action which is then reasonably necessary to carry out, or to prevent an interference with, the educational function of which he is then in charge. Teachers and other school personnel may not suspend students from school, and removal of a student from any educational function within the supervision of a teacher or any of the other school personnel may not extend for a period of one (1) day unless the removal is treated as a suspension under section 6 of this chapter.

(b) Subject to the limitations in section 3 of this chapter, each principal may take any action concerning his school or any school activity within his jurisdiction which is reasonably necessary to carry out or prevent interference with an educational function or school purposes. Such action may include establishing written rules and standards to govern student conduct. Similarly, the superintendent, or his administrative staff with his approval, may take any action with respect to all schools within the superintendent's jurisdiction which is reasonably necessary to carry out or prevent inter-

ference with an educational function or school purposes.

(c) The governing body may make written rules and establish written standards concerning student conduct which are reasonably necessary to carry out, or to prevent interference with carrying out, an educational function or school purpose.

\* \* \* \* \* \*

(g) The governing body may make such other delegations of rulemaking, disciplinary, and other authority as are reasonably necessary in carrying out the school purposes of the school corporation.

Ind.Code Ann. § 20–8.1–5–2 (West 1984). Clearly, the emphasis in Indiana is on the reasonableness of the school's regulations, which is in accord with this Court's standard of review for said regulations and rules. *See Miller v. Griesel,* 261 Ind. 604, 308 N.E.2d 701, 705 (1974) (reasonableness of school rule to be determined by court); *Salem Community Sch. Corp. v. Easterly,* 150 Ind.App. 11, 275 N.E.2d 317, 323 (1971).

■ While the issue of reducing a student's grades as punishment for nonacademic conduct is not well-settled in this country, or Indiana for that matter, a general consensus can be reached as to what a student's grades should represent. A student's grade or credit should reflect the student's academic performance or achievement, including participation in class, and presence in class. Reducing grades unrelated to academic conduct results in a skewed and inaccurate reflection of a student's academic performance.

In *Katzman v. Cumberland Valley School District,* 84 Pa.Cmwlth. 474, 479 A.2d 671 (1984), a student was suspended for five days, excluded from classes, expelled from the cheerleading squad, prohibited from taking a part in school activities during suspension, and later permanently expelled from the National Honor Society, for drinking wine while on a field trip. *Id.* 479 A.2d at 671. Under the school's disciplinary policy, a further penalty of grade

reduction was imposed. *Id.* The policy stated,

> Suspensions and Expulsions ... Reduce grades in all classes two percentage points for each day of suspension. The grades are to be reduced during the marking period when the in-school or out of school suspension occurred. In lieu of a two percentage point reduction the student may be assigned to a supervised Saturday work program provided the parent(s) and student accept the conditions of this option.

*Id.* at 671–72. The plaintiff was advised that as a consequence of her suspension, her grades in each subject to the entire second marking period would be reduced by ten points, two points for each day of suspension, and that the Saturday work provision was not available to her. *Id.* at 672–73. The Pennsylvania State Board of Education had in force a regulation that provided, "students shall be permitted to make up exams and work missed while being disciplined by temporary or full suspension within guidelines established by the board of school directors." *Id.* at 674 n. 4. The plaintiff argued that the school board's regulation was inconsistent with the Board of Education's regulation. The court of appeals agreed, even though the school had the inherent right to determine the nature of discipline to be administered to students violating its codes of behavior pursuant to state statute. *Id.* at 674. The court was then forced to decide the legality of the school board policy, which was not specifically authorized or described by statute or regulation, and authorized penalties affecting and reducing educational standings for infractions which were not education-related. *Id.* While noting the state's policy to make up class work during suspension, the court stated that

> We believe, however, that the policy and the penalty here goes beyond the scope of making up for time lost, such as the five days of suspension. Here, rather, although the penalty was for the five days missed, the assessed penalty downgraded achievement for a full marking period of nine weeks. Of course, for college entrance and other purposes this

would result in a clear misrepresentation of the student's scholastic achievement. Misrepresentation of achievement is equally improper and, we think, illegal whether the achievement is misrepresented by upgrading or by downgrading, if either is done for reasons that are irrelevant to the achievement being graded. For example, one would hardly deem acceptable an upgrading in a mathematics course for achievement on the playing field. In this connection, we find inept Appellant's example of downgrading for cheating. Cheating is related to grading. *Id.* at 674–675. The court thus held that the board's policy exercised in this manner represented an illegal application of its discretion, and accordingly the grade reduction was improper. *Id.* at 675. *See also Gutierrez v. School Dist. R–1*, 41 Colo. App. 411, 585 P.2d 935 (1978); *Dorsey v. Bale*, 521 S.W.2d 76 (Ky.App.1975); *Op. Att'y Gen.Ky.*, 77–547 (Sept. 7, 1977).

Similar to *Katzman*, the Plaintiff in *Hamer v. Board of Education*, had an unexcused absence from school when she left school during the lunch period on an emergency matter without first advising any teacher or staff member. 66 Ill. App.3d 7, 22 Ill.Dec. 755, 756, 383 N.E.2d 231, 232 (1978). The following Monday, Plaintiff returned and presented to the school a note from her mother excusing her absence from the preceding Friday afternoon. *Id.* Plaintiff was then informed by an administrative assistant of her school that because she left the premises without informing either a teacher or staff member, her absence was unauthorized, and as punishment her grades would be reduced by 3% in each of the courses she missed on that day. *Id.* The complaint alleged that some of her teachers reduced her grade average as required by the administrative rule of her high school, but others refused to do so. *Id.* The plaintiff also alleged that the grade reduction reduced her final grade average and affected her class standing. *Id.* Plaintiff argued that there was no statutory authority for the reduction of a grade as a disciplinary action, and that said rule deprived plaintiff of both procedural and substantive due process in violation of the federal and state constitutions. *Id.* 22 Ill.Dec. at 757, 383 N.E.2d at 233. The defendant township moved to dismiss plaintiff's complaint.

In spite of the decision in *Knight*, the Illinois Appellate Court held that the plaintiff's complaint was sufficient to require a response by the board and a hearing to determine whether or not her right to due process was violated by procedural infirmities or by the application of arbitrary grade reduction policies having no reasonable relationship to the disciplinary objective sought to be obtained by the board. *Id.* 22 Ill.Dec. at 758; 383 N.E.2d at 234. In reaching this decision, the Court noted that "further educational and employment opportunities can be impaired by a poor school record or, by the same token, enhanced by a good record." *Id.* 22 Ill.Dec. at 756–57, 383 N.E.2d at 232–33. Cf. *Campbell v. Board of Educ.*, 193 Conn. 93, 475 A.2d 289 (1984). *Accord* Op.Att'y Gen. Ariz., Re: I84–009 (January 16, 1984); 1982 Op.Att'y Gen.Ariz. 126 (December 22, 1982); Op.Att'y Gen.Ky., OAG 72–753 (November 14, 1972); Op.Att'y Gen.Utah, No. 83–19 (May 26, 1983). *But see New Braunfels Indep. Sch. Dist. v. Armke*, 658 S.W.2d 330 (Tex.App.1983); *Myre v. Board of Educ.*, 108 Ill.App.3d 440, 64 Ill.Dec. 145, 146, 439 N.E.2d 74, 75 (1982) (student suspended due to drinking at high school football game and who missed examinations did not have due process rights violated because such right is not a specific constitutional guarantee under *Wood v. Strickland*); *Fisher v. Burkburnett Indep. Sch. Dist.*, 419 F.Supp. 1200, 1204 (N.D.Tex.1976). *See also Donaldson v. Board of Educ.*, 98 Ill.App.3d 438, 53 Ill. Dec. 946, 947–48, 424 N.E.2d 737, 738–39 (1981) (seventh grader who was suspended due to fighting and missed examinations was not denied right to substantive due process as his suspension did not rise to the level of an arbitrary act).

In view of the above, this Court must find that the rule in question is unreasonable and arbitrary on its face. The parties stipulated that "the grade reductions were not imposed for lack of effort of academics, but were imposed as part of the disciplinary action to discourage the consumption

of alcohol during school hours." By the School's own admission, the sanctions were imposed on Smith as a disciplinary measure and not imposed due to a lack of effort in academics. The School claims that the use of alcohol during school hours adversely affects academic achievement of the student user. Put this way, any type of misconduct would adversely affect a student's academic accomplishments, including skipping school, not paying attention in class, causing disruption, etc.

■ Based on the record before the Court, the Court finds that the School has not advanced a reasonable relationship between the use of alcohol during school hours, and the 4% reduction in grades for each day suspended for said alcohol use. Moreover, the policy is arbitrary because the grade of the student who missed class that day for serving suspension or other reasons was reduced by 4%, but the student who was in class and not serving suspension did not have 4% of his grade determined that day. To warrant an academic sanction, a student's misconduct must be directly related to the student's academic performance, and there is no indication in this record that such is the case. *See In Re MacWhinnie*, 20 Ed.Dept.Rep. 145, 146 (N.Y.1980) (student suspended for five days for nonacademic conduct and who could not receive grade greater than 75% pursuant to school rule was entitled to grade credit because grade reduction "to 75% for conduct unrelated to his academic performance in those courses clearly constitutes arbitrary and unreasonable action"); *Matter of Caskey*, 21 Ed.Dept.Rep. 138, 139–40 (school rule for automatic reduction of 5% in marking period for each class missed was not reasonably related to absenteeism because to "warrant an academic sanction, the misconduct must be directly related to the student's academic performance ... a board of education may not subvert the purpose of grading ... by arbitrarily reducing a student's grades as a means of imposing discipline"). As noted above, a student's grades should be a reflection of the student's academic performance, which are determined by the teacher based on a number of factors, including test scores, class participation, and attend-

ance. The rule at hand gives the teacher no discretion in whether to deduct a student's grade for their suspension, which may lead to arbitrary results in practice, that is, disproportionate punishment for an incident. Such is the case here, and the Court further finds that the punishment imposed on Smith, out-of-class suspension plus a 20% grade reduction in each class, was excessive and disproportionate to her violation of the School's rules.

CONCLUSION

The School has violated Smith's substantive due process rights under the United States Constitution pursuant to 42 U.S.C. § 1983, by reducing her grades by 20% as punishment for alcohol-related misconduct. The School is hereby ORDERED to correct Smith's grades in accordance with the mandates of this opinion. Further, the Court declares the rule that calls for a grade reduction to discipline nonacademic conduct illegal, and null and void. This Court will not enjoin enforcement of this rule because the School has amended key provisions of the handbook. However, the School should keep in mind the findings of this opinion when reviewing the handbook that is now in force. This matter will be placed on the trial calendar.