John S. Robb, Legal Counsel Somers, Robb and Robb 110 E. Broadway, Box 544 Newton, Kansas 67114-0544
Dear Mr. Robb:
As legal counsel for Unified School District No. 373, you request our opinion regarding the authority of a unified school district to suspend or expel a pupil from attendance at school. Specifically, you ask the following:
 1. Whether K.S.A. 1996 Supp. 72-1113 establishes the exclusive procedure for handling truancies;
 2. Whether a unified school district may adopt rules regarding attendance, and suspend or expel a pupil who violates such rules;
 3. Whether instances in which a pupil fails to report for after-school detention or in-school suspension, or fails to report to the school principal's office as instructed may be considered violations of school rules such that the pupil may be subject to suspension or expulsion; and
 4. Whether a unified school district may refuse to accept makeup work submitted by a pupil who has violated the school's attendance rules, or may withhold academic credit from a pupil who has violated the school's attendance rules.
The Legislature has, pursuant to constitutional mandate, established a system of local public schools which are placed under the supervision of locally elected boards of education. See Kan. Const., art. 6, § 5. Those boards of education are vested with authority to operate the schools and provide rules and regulations to govern the learning process, subject, however, to the recommendations of the State Board of Education and the statutes of this State. Blaine v. Board of Education,250 Kan. 560, 564 (1972); In re C.M.J., 259 Kan. 854, 860-61 (1996).
Pursuant to K.S.A. 72-1111, children between the ages of seven and sixteen years, with some exceptions, are required to attend either a public school for the duration of the school term provided for in K.S.A.72-1106, and amendments thereto, or a private, denominational or parochial school taught by a competent instructor for a period of time which is substantially equivalent to the period of time public school is maintained in the school district in which the private, denominational or parochial school is located.
 "(c)(1) Whenever a child is required by law to attend school and is enrolled in school, and the child is inexcusably absent therefrom on either three consecutive school days or five school days in any semester or seven school days in any school year, whichever of the foregoing occurs first, the child shall be considered to be not attending school as required by law. A child is inexcusably absent from school if the child is absent therefrom all or a significant part of a school day without a valid excuse acceptable to the school employee designated by the board of education to have responsibility for the school attendance of such child.
 "(2) Each board of education shall adopt rules for determination of valid excuse for absence from school
and for determination of what shall constitute a `significant part of a school day' for the purpose of this section." K.S.A. 1996 Supp. 72-1113 (emphasis added).
In Attorney General Opinion No. 80-243, the ability of a unified school district to suspend or expel a pupil for nonattendance in school was reviewed.
 "Unlike suspension or expulsion, which may result from a student's violation of district regulations or rights of other students, truancy involves a student's violation of state law, namely K.S.A. 1979 Supp. 72-1111, which provides for compulsory education. . . . While the district is responsible for determining the validity of excuses and for keeping records of attendance, any cases of truancy are to be reported to the district court, pursuant to K.S.A. 1979 Supp. 72-1113(a). Once this is done, the child may be dealt with through the Juvenile Code, K.S.A. 1979 Supp. 38-801 et seq. . . . [T]he court is empowered to make an appropriate disposition of the matter, if after notice and hearing it is determined that the child is in fact a truant. [Citations omitted.] Such a resolution can include placing the child on probation in the custody of its parents, in a youth residential facility, or in the custody of the state department of social and rehabilitation services. [Citation omitted.] In any of these alternative dispositions, the child can be ordered back to school by [the] court.
 "In light of the above statutory handling of the problem of a truant child, it is our opinion that a school district is without the power to take action on its own, through suspension or expulsion, on the same grounds. [Emphasis added.] We note that of the five separate bases set forth for the latter actions at K.S.A. 72-8901, none deal with the non-attendance of a student. Rather, they address situations where a student creates problems through his or her conduct while at school. . . . [Emphasis in original.] Additionally, to find otherwise would have the effect of giving a school district concurrent jurisdiction with the courts over the area of truancy, a result which should be avoided unless clearly commanded by statute. Finally, it is unclear how the public interest would be served by the suspension or expulsion of a truant student. Public policy would seem to require that in such cases efforts be made to get the child back into class and to keep him or her there, instead of furthering his non-attendance. See Nutt v. Board of Education, 128 Kan. 507, 509 (1929)." Attorney General Opinion No. 80-243.
A number of amendments have been made to the statutes regarding compulsory attendance and suspension or expulsion of pupils since issuance of Attorney General Opinion No. 80-243. However, the amendments have not changed the premise that unified school districts are required to report nonattendance to other entities (presently the Secretary of Social and Rehabilitation Services or the county or district attorney, depending on the age of the child) and that such nonattendance may subject the child to judicial proceedings pursuant to K.S.A. 38-1501 et seq. See K.S.A. 1996 Supp. 38-1502; 38-1502b. Grounds for suspension or expulsion continue to be based on conduct occurring while the pupil is attending school or a school supervised activity, or conduct which would constitute the commission of a felony. K.S.A. 1996 Supp. 72-8901. The public policy of the State continues to favor attendance in school rather than furthering a child's nonattendance. See L. 1996, ch. 229, § 121 (raises the age of children subject to compulsory attendance to 18; effective July 1, 1997). Therefore, as expressed in Attorney General Opinion No. 80-243, the authority of a unified school district to suspend or expel a child pursuant to K.S.A.72-8901 et seq. does not extend to cases involving truancy.
While the State has mandated that a child between the ages of seven and 16 years attend school, the unified school district possesses some authority in adopting rules for determining whether a pupil has met that mandate. Pursuant to K.S.A. 1996 Supp. 72-1113, "[e]ach board of education shall adopt rules for determination of valid excuse for absence from school and for determination of what shall constitute a `significant part of a school day'. . . ." Clearly, a unified school district may adopt rules regarding attendance of pupils at school, provided such rules are consistent with state statutes and regulations.
Whether a unified school district may suspend or expel a pupil for violation of any of the school district's rules is governed by the provisions of K.S.A. 1996 Supp. 72-8901. Among the grounds for which a pupil may be suspended or expelled are the following:
 "(a) Willful violation of any published regulation for student conduct adopted or approved by the board of education;
 "(b) conduct which substantially disrupts, impedes or interferes with the operation of any public school.
. . . .
 "(f) disobedience of an order of a teacher, peace officer, school security officer or other school authority when such disobedience can reasonably be anticipated to result in disorder, disruption or interference with the operation of any public school or substantial and material impingement upon or invasion of the rights of others." K.S.A. 1996 Supp. 72-8901.
Based upon the language of the statute, the authority of a unified school district to suspend or expel a pupil for violation of the school district's rules depends on whether the violation of the rule is a willful violation of a published regulation or whether the violation substantially disrupts, impedes, or interferes with the operation of the school. Additionally, with regard to attendance rules, as discussed above the district's authority also depends on whether the violation would subject the pupil to the procedure established in K.S.A. 1996 Supp. 72-1113. Likewise, whether a pupil who fails to report for after-school detention or in-school suspension, or fails to report to the school principal's office as instructed may be suspended or expelled depends on whether the pupil's failure to report constitutes disobedience of an order of a teacher or other school authority and such disobedience can reasonably be anticipated to result in disorder, disruption or interference with the operation of any public school.
The ability of a unified school district to impose academic penalties for violations of school rules has not been addressed by the Kansas appellate courts. Other jurisdictions which have addressed the issue have reached varying conclusions regarding such authority. Cases in which the courts have upheld academic penalties are: Slocum v. Holton Board of Education, 429 N.W.2d 607
(Mich.App. 1988) (school's attendance policy permitted letter grade reductions of pupils who, having a certain number of excused absences, fail to attend after-hours study sessions; policy impliedly authorized by state statute; neither arbitrary nor unreasonable); Donaldsonv. Board of Education for Danville, Etc., 424 N.E.2d 737
(Ill.App. 1981) (pupil not allowed to make up examinations and other work missed while on 3-day suspension for fighting; in this instance, penalty did not rise to level of arbitrary act); Knight v. Board ofEducation, 348 N.E.2d 299 (Ill.App. 1976) (school's attendance policy disallowed credit for makeup work and imposed one letter grade reduction per unexcused absence; truancy reflected a lack of effort; penalty was not so harsh as to deprive pupil of substantive due process rights; rational connection between grade reduction and truancy). Courts have rejected school policies imposing academic penalties in the following cases: Smith v. School City of Hobart, 811 F. Supp. 391
(N.D.Ind. 1993) (school's alcohol policy imposed 4% grade reduction for each day of suspension; no reasonable relationship shown by school; arbitrary because 4% of the grade not determined on each day);Katzman v. Cumberland Valley School District, 479 A.2d 671
(Pa.Cmwlth. 1984) (school's alcohol policy imposed 2% grade reduction for each day of suspension, with no opportunity to participate in makeup program; exceeded school's authority to adopt "reasonable rules and regulations" as assessed penalty misrepresented pupil's achievement for the full marking period); Gutierrez v.School District R-1, 585 P.2d 935 (Colo.App. 1978) (school's attendance policy denied academic credit for grading periods in which pupil accumulated in excess of seven absences; state statute disclosed legislative policy that nonattendance sanctions not be imposed for absences incurred during suspension; policy exceeded school's authority); Dorsey v. Bale, 521 S.W.2d 76 (Ky. 1975) (school's alcohol policy imposed suspension; school's attendance policy imposed a 5-point grade reduction for each day of suspension served during the grading period; grade reduction exceeded school's authority; state statute regarding suspension preempted school's authority to impose additional punishment).
The Kansas Supreme Court has acknowledged its reluctance to review policies regarding conduct of pupils attending public school.
 "In measuring the appropriateness and reasonableness of school regulations against the personal rights of the individual student, courts should give full credence to the role and purposes of the schools as well as the nature of the problems inherent in the public education of our youth. Careful recognition should be given to differences between what are reasonable restraints in the public classroom and what are reasonable restraints on a non-student on the public street corner. (See Gere v. Stanley, 320 F. Supp. 852 [M.D. Pa. 1970], affirmed 453 F.2d 205
[3rd Cir.].)
 "The responsibility for maintaining proper standards for learning and discipline, and for creating a wholesome academic environment in our public schools is vested in the local boards of education, consistent with fundamental constitutional safeguards; and it is not in the courts." Blaine, 210 Kan. at 570-71.
See also In re C.M.J., 259 Kan. at 860-61.
Factors for determining a pupil's grades are not limited to scores received on examinations. See Smith,811 F. Supp. at 397 (student's grade should reflect academic performance, including participation in class, and presence in class); Slocum, 429 N.W.2d at 610 (an education entails more than just correctly answering questions asked on an examination); Knight,348 N.E.2d at 303-04 (high school grading systems have co-mingled factors of pupil conduct with scholastic attainment in rendering grades). Given the role of the school district in establishing an environment conducive to providing education for pupils, it is our opinion that a unified school district may adopt an attendance policy under which academic penalties may be imposed for noncompliance. The academic penalties imposed under the policy must be reasonably related to the disciplinary objective sought to be obtained by the school district.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm